SLIP-OP 04-84

UNITED STATES COURT OF INTERNATIONAL TRADE

_____ :
                                            :
THE PILLSBURY CO.,                          :      **PUBLIC VERSION**
                                            :
              Plaintiff,                    :      Before:        WALLACH, Judge
                                            :      Court No.:     00-12-00570
       v.                                   :
                                            :
UNITED STATES,                              :
                                            :
              Defendant.                    :
_____ :

[Judgment for Defendant.]

                                            Decided: July 12, 2004

Neville Peterson, LLP, (John M. Peterson, Curtis W. Knauss) for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge,
International Trade Field Office, Department of Justice, Civil Division, Commercial Litigation
Branch; Saul Davis, Department of Justice, Civil Division, Commercial Litigation Branch;
Michael Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, U.S.
Customs and Border Protection, of counsel, for Defendant.

**WALLACH, Judge:**

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

**I**
**INTRODUCTION**

       This matter is before the court for decision following a bench trial on November 13,

2003, and November 14, 2003. Plaintiff, the Pillsbury Company, challenges the United States

Customs Service's[1] ("Customs") decision to classify certain entries of frozen dessert bars as dairy products under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 2105.00.40 (1999). Plaintiff seeks an order directing reliquidation of these entries, classification of the subject merchandise under HTSUS Subheading 2105.00.50, or in the alternative under HTSUS Subheading 0403.10.90.00,[2] and a refund of all duties paid, plus interest. This Court has exclusive jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994), which provides for judicial review of denied protests filed in compliance with the provisions of 19 U.S.C. § 1514 (1999). Pursuant to the following findings of fact and conclusions of law, and in accordance with USCIT R. 52(a), the court enters a final judgment in favor of the Defendant and against Plaintiff.

## II
## BACKGROUND

Plaintiff entered certain Haagen-Dazs brand frozen dessert bars from Canada, through the Port of Detroit, Michigan, between March 30, 1999, and September 17, 1999. The subject merchandise is comprised of two flavors of Haagen-Dazs brand frozen dessert bars. One has

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. 107-296, § 1502, 116 Stat. 2135, 2308-09 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

[2] HTSUS Subheading 0403.10.90.00 (1999), provides:

> 0403. Buttermilk, curdled milk, yogurt, kephir and other fermented or acidified milk and cream, whether or not concentrated or containing added sugar or other sweetening matter or flavored or containing added fruit, nuts or cocoa:
>
> 0403.10.       Yogurt:
>
> 0403.10.90.00       Other.

chocolate sorbet on the outside and vanilla yogurt on the inside, one with raspberry sorbet on the

outside and vanilla yogurt on the inside.[3]  Between February 11, 2000, and July 28, 2000,

Customs classified the imported frozen dessert bars under HTSUS Subheading 2105.00.40,[4]

---

[3] For convenience the core of both bars is herein referred to as yogurt, or the yogurt portion.  Except where explicitly addressed, this term is used for ease of reference and is not to be construed as a finding of fact or law as to the proper classification of that portion of the subject merchandise.

[4] HTSUS Subheading 2105.00.30, through 2105.00.50 provide for:

| | | |
|---|---|---|
| 2105.00 | Ice cream and other edible ice, whether or not containing cocoa: Ice cream: | |
| | * * * | |
| | Other: Dairy products described in additional U.S. note 1 to chapter 4: | |
| 2105.00.30 | | Described in additional U.S. note 10 to chapter 4 and entered pursuant to its provisions |
| 2105.00.40 | | Other. |
| 2105.00.50 | Other. | |

Additional U.S. Note 1 to Chapter 4 states that "for the purposes of this schedule, the term 'dairy products described in additional U.S. note 1 to chapter 4' means any of the following goods: malted milk, and articles of milk or cream (except (a) white chocolate and (b) inedible dried milk powders certified to be used for calibrating infrared milk analyzers); articles containing over 5.5 percent by weight of butterfat which are suitable for use as ingredients in the commercial production of edible articles (except articles within the scope of other import quotas provided for in additional U.S. notes 2 and 3 to chapter 18); or, dried milk, whey or buttermilk (of the type provided for in subheading 0402.10, 0402.21, 0403.90 or 0404.10) which contains not over 5.5 percent by weight of butterfat and which is mixed with other ingredients, including but not limited to sugar, if such mixtures contain over 16 percent milk solids by weight, are capable of being further processed or mixed with similar or other ingredients and are not prepared for marketing to the ultimate consumer in the identical form and package in which imported."

assessed duty thereon at the rate of 51.7¢ plus 17.5% *ad valorem*, and liquidated accordingly. Plaintiff paid all liquidated duties, fees and charges prior to the commencement of this action. Between May 10, 2000, and July 31, 2000, Plaintiff filed four timely protests with the Port Director at Detroit, Michigan, challenging Customs' classification. It claimed that the frozen dessert bars were properly classified under HTSUS Subheading 2105.00.50, and entitled to duty-free entry under NAFTA. Customs denied Plaintiff's protests between July 7, 2000, and October 26, 2000. On December 18, 2000, Plaintiff commenced the instant action by filing a Summons with the Clerk of the Court.

In its Complaint, Plaintiff claims that the subject merchandise is properly classified under HTSUS subheading 2105.00.50, or, in the alternative, under HTSUS Subheading 0403.10.90.00, and seeks a refund of all duties paid, plus interest. The basis of Plaintiff's claim is that the dessert bars are neither primarily characterized by their frozen yogurt component, nor is that component properly classified as a "product of milk" as defined in HTSUS.

Defendant claims that the dessert bars were properly classified and thus requests judgment in its favor, affirming its classification and assessment of duties. Defendant contends that the frozen dessert bars are properly classifiable as 'articles of milk,' a term which they contend, under statutory interpretation and case law, is broader than 'milk.' Defendant states that, based on industry standards for ice cream and frozen yogurt, as well as the primary ingredients of the subject product, the frozen yogurt is the basis of the product, it's essential nature, whereas the sorbet portion is correctly viewed as a flavoring or coating. Furthermore, according to Defendant, the yogurt core is not, in fact yogurt, but, based on limited portion of fermented ingredients, milk.

4

The parties' contentions center on classifying the subject desert bars under one of three possible HTSUS subheadings, 2105.00.40 (requiring a finding that the yogurt portion predominates and that said portion constitutes an article of milk or cream as defined in U.S. note 1 to chapter 4 of the HTSUS), 0403.10.90.00 (requiring a finding that the yogurt portion predominates and that said portion constitutes yogurt), or 2105.00.50 (requiring a finding that the sorbet portion predominates). Ultimately, which of the three categories these items fall into depends on whether essential character is the 'yogurt' portion. If the essential character is the sorbet portion, HTSUS subheading 2105.00.50 is eliminated as a possibility. If the essential character is the 'yogurt' portion, and this portion is properly characterized as an 'article of milk', Customs initial finding is confirmed. If the 'yogurt' portion is characterized as 'yogurt', its proper classification lies under 0403.10.90.00.[5]

**III**
**STANDARD OF REVIEW**

Plaintiff paid all liquidated duties and charges prior to the timely commencement of this action. Although Customs's decisions are entitled to a presumption of correctness under 28 U.S.C. § 2639(a)(1) (1994), the Court makes its determinations upon the basis of the record made before the Court, rather than that developed by Customs. See United States v. Mead Corp., 533 U.S. 218, 233 n.16, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001). Accordingly, the Court makes the following findings of fact and conclusions of law as a result of the de novo trial. See 28 U.S.C. § 2640(a) (1994).

---

[5] All parties agree that classification under HTSUS subheadings covering ice cream would be inappropriate. See Pretrial Order at 6.

5

# IV
# FINDINGS OF FACT

## A
## Facts Uncontested By The Parties And Agreed To In The Pretrial Order

1.      The merchandise which is the subject of this case (the "subject merchandise") consists of frozen dessert bars.  Two varieties of the subject merchandise are included in this case: (A) one bar consists of an outer shell of raspberry flavored sorbet and an inner filling of vanilla-flavored frozen yogurt, and (B) the second bar consists of an outer shell of chocolate-flavored sorbet and an inner filling of vanilla-flavored frozen yogurt.

2.      In their condition as imported, the dessert bars are frozen, and are packaged for retail sale.  Each of the frozen dessert bars features a wooden stick which is used to hold the bars while they are being eaten.

3.      Between March 30, 1999, and September 17, 1999, Plaintiff entered at the Port of Detroit, Michigan, under cover of consumption entries listed in the Summons, shipments containing the subject merchandise; frozen dessert bars.

4.      Between February 11, 2000, and July 28, 2000, the Post Director of Customs at the Port of Detroit, Michigan liquidated the subject entries, classifying the imported frozen dessert bars in liquidation under HTSUS Subheading 2105.00.40, as "Ice cream and other edible ice, whether or not containing cocoa:  Other:  Dairy products described in additional U.S. note 1 to chapter 4: Other" and assessing duty thereon at the rate of 51.7¢ plus 17.5% *ad valorem*. Plaintiff paid all liquidated duties, fees and charges prior to the commencement of this action.

5.  Between May 10, 2000, and July 31, 2000, Plaintiff caused to be filed with the Port Director of Customs at Detroit, Michigan, timely protests, challenging the classification in liquidation of the imported merchandise, and asserting that the frozen dessert bars are properly classified under HTSUS Subheading 2105.00.50, as "Ice cream and other edible ice, whether or not containing cocoa:  Other:  Other" and entitled to duty-free entry under NAFTA.

6.  The Port Director of Customs denied Plaintiff's protests between July 7, 2000, and October 26, 2000.

7.  On December 18, 2000, Plaintiff timely commenced the instant action by filing a Summons with the Clerk of the Court.

8.  Neither the imported frozen dessert bars, nor any component thereof, constitute or consists of "ice cream," as that term is commonly or commercially known. The imported frozen dessert bars are not classifiable under HTSUS subheadings 2105.00.05 through 2105.00.20.

9. The merchandise which is the subject of this action was also the subject of New York Customs Ruling Letter No. D84417 (Dec. 3, 1998), in which the Bureau of Customs and Border Protection (then the United States Customs Service) classified the subject merchandise under HTSUS subheading 2105.00.40.

**B**
**Facts Established At Trial**

10. Plaintiff's current packaging, entered into evidence as Plaintiff's exhibit 2, differs from the subject merchandise as imported. However, although the box has been updated, the subject frozen dessert bars inside remain unchanged.

11. The current packaging states that the box contains "FAT FREE VANILLA FROZEN YOGURT COATED WITH RASPBERRY SORBET." The packaging also specifies that "[w]e take rich, creamy Haagen-Dazs yogurt and dip it in incredibly smooth Haagen-Dazs sorbet. . ."

12. Although the packaging specifies that the yogurt is dipped in sorbet, in manufacturing the subject merchandise, the sorbet is, in fact, poured into a mold and chilled. When it reaches a certain temperature a portion of the unfrozen center is "sucked back" and saved for future use. The frozen yogurt portion is then injected into the void to create the frozen yogurt center.

13. Haagen-Dazs' development and marketing documentation demonstrates that the yogurt portion of the dessert bars was tested with a variety of flavorings. The documentation indicates that the subject merchandise was consistently identified by the yogurt component. ("Pl. Ex.") 11-14.

14. The yogurt portion of the subject merchandise weighs 32 grams. The raspberry portion of that flavor of dessert bar weighs 36 grams. The chocolate portion of that flavor of dessert bar weighs 35.9 grams.[6] An entire dessert bar weighs approximately 71 grams.

15. The documentation entered as Pl. Ex. 3, p.48, describing the ingredients used to produce the subject merchandise, demonstrates that by weight and volume, milk is an essential ingredient.

16. By weight, milk products ( LK skim/conditioned skim milk blend and condensed fresh US Grade A skim milk) comprise 21.43% of the total weight of subject merchandise. By volume, milk products comprise approximately the same percentage.

17. This percentage of milk products is approximately equal to the weight of the fruit

---

[6] The chocolate flavor of dessert bar has been discontinued.

ingredients in the raspberry flavored bar.

18.    The weight of the milk ingredients in both types of bars are exceeded only by the weight of the water and sweeteners

19.    The court finds highly probative and credible the expert testimony of Professor Robert L. Bradley, Jr.  The court designated Professor Bradley as an expert in the production, processing and formulas relating to frozen yogurt and yogurt.

20.    Professor Bradley is currently a Professor Emeritus at the University of Wisconsin, where he earned his Ph.D. in 1964.  From 1964 until the present, he has taught food science at the University of Wisconsin and has published extensively.  Professor Bradley holds memberships in several professional societies and has received numerous awards.  He has taught courses in the manufacture of both yogurt and frozen yogurt.

21.    Professor Bradley testified at trial that in his expert opinion the yogurt portion is what gives the bars their essential character.  His opinion is based on the industry and Code of Federal Regulations standard of comparing solids content, a comparison of which portion is more nutritious, and his review of Plaintiff's development, production, processing and marketing documents.

22.    Plaintiff offered certain product testing documents, entitled "Live and active culture test for Haagen-Dazs fat free frozen yogurt" and admitted as Pl. Ex. 8., which the court admitted not to establish the validity of the tests or results, but only to establish that from time to time, the Pillsbury Company tests frozen yogurt.

23.    Professor Bradley reviewed these testing documents and Plaintiff's formula documents concerning the composition of the subject merchandise.

24.    Professor Bradley testified credibly that yogurt, according to the National Yogurt Association and under the Code of Federal Regulations,[7] is a product in which all milk solids have been fermented.

25.    The yogurt portion of the subject merchandise is not one in which all milk solids have been fermented.

26.    National Import Specialist Thomas Brady, with the National Commodity Specialist Division of Customs, testified regarding the practices of Customs regarding classification of

---

[7] See 21 C.F.R. §§ 131.200, 131.203, 131.206 (1999) covering yogurt generally.  Each states that yogurt is a "food produced by culturing one or more of the optional dairy ingredients specified in paragraph (c) of this section with a characterizing bacterial culture that contains the lactic acid-producing bacteria, Lactobacillus bulgaricus and Streptococcus thermophilus."

merchandise under the provisions of Heading 2105. This testimony was credible and probative.

27. The decision to classify the subject merchandise under 2105.00.40 was based on the agency's determination that the frozen desert bars constituted an "article of milk or cream" under HTSUS additional U.S. note 1 to chapter 4.

28. Brian Sweet, Product Quality Manager for Haagen-Dazs testified. Mr. Sweet identified the subject merchandise, and discussed how it is manufactured. He testified as to the formulation of the components. He also described the marketing plans and product development within Pillsbury during the time of the subject entries. His testimony was credible and probative.

29. The product does not contain full cream milk, or skimmed milk.

30. The yogurt portion of the subject merchandise is made from 88% by weight of a "vanilla flavored ice milk base" and 12% by weight of a "yogurt base."

31. The "vanilla flavored ice milk base" portion of the yogurt core is made from [a percentage] by weight of a reduced lactose skim milk blend, together with [a percentage of] liquid amber sugar, [a percentage of] corn syrup solids, [a percentage] of a blend of corn syrup and liquid sugar, [a percentage] of charcoal-filtered water, and [a percentage of] specialty corn syrup solids.

32. The "yogurt base" portion of the yogurt core is made from [a percentage] by weight of condensed fresh U.S. Grade A skim milk, [a percentage of] charcoal-filtered water, and [a percentage of certain types of] yogurt cultures.

33. Of the yogurt portion, only a very small percentage actually contained yogurt cultures. This percentage is diluted with the "vanilla flavored ice-milk base" to provide the flavor of yogurt.

34. Once the "yogurt base" and "vanilla flavored ice-milk base" are mixed, there is no further fermentation due to the concentration of sugars.

35. The vanilla flavored ice-milk base which made up a majority of the 'yogurt' portion was never fermented

36. Plaintiff offered into evidence the requirements of the National Yogurt Association for live and active culture yogurt. Pl. Ex. 7.

37. Based on these standards, as well as the testimony of Prof. Bradley and Mr. Sweet, in order to meet the criteria of the National Yogurt Association criteria for live and active culture yogurt, sampling and analytical procedures National Yogurt Association, a product must, *inter alia*, contain a certain level of active cultures, $10^7$ CFU per gram, at the end of the stated shelf

life, and have a certain titratable acidity, at least 0.15%, obtained from fermentation.

38.    Plaintiff failed to establish through credible evidence that the yogurt portion of the subject merchandise contained the requisite level of active cultures at the end of the stated shelf life.

39.    Plaintiff failed to establish through credible evidence that the yogurt portion of the subject merchandise had the requisite titratable acidity as a result of fermentation.

40.    If any of these Findings of Fact shall more properly be Conclusions of Law, they shall be deemed to be so.

## V
## CONCLUSIONS OF LAW

1.    Plaintiff did not meet its burden of proving that the imported desert bars are not within the scope of the tariff provision for "article[s] of milk or cream" of a kind described in additional U.S. Note 1 to HTSUS Chapter 4.

2.    Based on the foregoing Findings of Fact, the court finds the essential character of the subject merchandise to be the yogurt portion of the dessert bar.[8]  The subject bars are composite goods, consisting of two or more materials or components classified in different headings of the tariff, frozen yogurt portion under 2105.00.40, and sorbet portion classifiable under 2105.00.50. The essential character of an entry is "that attribute which strongly marks or serves to distinguish what it is.  Its essential character is that which is indispensable to the structure, core or condition of the article, i.e., what it is. Webster's Third New International Dictionary, 1966 edition." Oak Laminates D/O Oak Materials Group v. United States, 8 CIT 175, 180 (1984) (citing United China & Glass Co. v. United States, 61 Cust. Ct. 386, C.D. 3637, 293 F. Supp. 734 (1968)).  The marketing of the merchandise, the weight and volume of the ingredients, and the product itself, in addition to other facts revealed at trial support this conclusion.  The court in Mead Corp. v.

---

[8] General Rule of Interpretation 3(b) states that:

> Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

Explanatory note to General Rule of Interpretation 3(b) states that "[t]he factor which determines essential character will vary by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods."

United States, 283 F.3d 1342, 1349 (Fed. Cir., 2002), explained that "[w]hile the importer's marketing of the goods will not dictate the classification, such evidence is relevant to the determination." Thus, in accordance with General Rule of Interpretation No. 3 (b), this court finds that the yogurt portion gives the merchandise its essential character.

3.      HTSUS subheading 2105.00.40 covers "Ice cream and other edible ice, whether or not containing cocoa: Other:  Dairy products described in additional U.S. note 1 to chapter 4: Other."  The court finds that the yogurt portion of dessert bars constitutes a dairy product described in additional U.S. note 1 to Chapter 4 of the HTSUS, given that this portion is not entirely fermented and based upon the nature of the ingredients used.

4.      Note 1 to Chapter 4 of the HTSUS states that "[t]he expression '<u>milk</u>' means full cream milk or partially or completely skimmed milk."

5.      Additional U.S. note 1 to Chapter 4 of the HTSUS states that "[f]or the purposes of this schedule, the term '<u>dairy products described in additional U.S. note 1 to chapter 4</u>' means and of the following goods: malted milk, and articles of milk or cream. . ."  Thus, the range of items covered by "<u>dairy products described in additional U.S. note 1 to chapter 4</u>", are broader than full cream milk or partially or completely skimmed milk.

6.      As the court explained in <u>United States v. Andrew Fisher Cycle Inc.</u>, 57 CCPA 102, 426 F.2d 1308 (1970); <u>Washington Int'l Ins. Co. v. United States</u>, 24 F.3d 224 (1994), the name under which merchandise is marketed is not dispositive for classification purposes.  Thus, the fact that Plaintiff routinely refers to the core as "yogurt" and markets the dessert bars that way is not sufficient to establish then, legal classification as yogurt.

7.      As the fermented part comprises only about 12% of the yogurt portion, this court finds that it would be improper to classify the entire yogurt portion, and thus the entire entry, as yogurt.

8.      Merchandise must be examined to determine whether, as imported, it contains the named ingredients.  <u>Imprex, Inc. v. United States</u>, 17 CIT 650 (1993).  Here the merchandise was not comprised chiefly of yogurt as imported.  The dessert bars did contain articles of milk or cream as defined in HTSUS additional U.S. note 1 to Chapter 4.

9.      By operation of the finding that the subject merchandise contains articles of milk or cream, the dessert bars cannot be classified under HTSUS heading 0403 covering YOGURT. The Explanatory Notes discuss the scope of Chapter 4, which includes the "yogurt" of HTSUS heading 0403, it states:

> The Chapter also **excludes**, *inter alia*, the following:
> (c)     Ice cream and other edible ice (heading 21.05).

11

Harmonized Commodity duty Description and Coding system, Explanatory Notes (1st ed. 1986) at 30.

10.    As a confection, dessert, or novelty, the subject merchandise is properly covered by HTSUS heading 2105.

11.    Because the evidence shows that the subject merchandise is an article of milk as defined in U.S. note 1 to chapter 4 of the HTSUS, the court finds that the merchandise is properly classified under HTSUS subheading 2105.00.40.

12.    Accordingly, Plaintiff has failed to overcome the presumption of correctness, pursuant to 28 U.S.C. § 2639(a) (1994), that attaches to Customs' classification decisions.

13.    If any of these Conclusions of Law shall more properly be Findings of Fact, they shall be deemed to be so.


_/s/ Evan. J. Wallach_
Judge

Dated: July 12, 2004
        New York, New York