# United States Court of Appeals for the Federal Circuit

04-1591

THE PILLSBURY COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Curtis W. Knauss, Neville Peterson LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was John M. Peterson.

Saul Davis, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney in Charge, International Trade Field Office, of New York, New York. Of counsel was Michael W. Heydrich, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, New York, New York.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

04-1591

THE PILLSBURY COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  December 15, 2005

_____

Before MICHEL, Chief Judge, LOURIE and LINN, Circuit Judges.

MICHEL, Chief Judge.

The Pillsbury Company ("Pillsbury") appeals the judgment of the United States Court of International Trade upholding the tariff classification of its imported Haagen-Dazs dessert bars by the United States Bureau of Customs and Border Protection ("Customs").[1]  Pillsbury Co. v. United States, 341 F. Supp. 2d 1290 (Ct. Int'l Trade 2004).  Because the finding that the Haagen-Dazs dessert bars are not predominantly sorbet, but frozen ice milk intermixed with yogurt, which is distinguishable from traditional yogurt, is not clearly erroneous, the dessert bars were properly classified.  Accordingly, we affirm.

---

[1]     Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. Homeland Security Act of 2002, Pub. L. 107-296, § 1502, 116 Stat. 2135, 2308-2309 (2002).

**I**

The imported products at issue in this case are Haagen-Dazs frozen dessert bars. The bars consist of a core of a vanilla-flavored frozen yogurt-ice milk mixture coated with either raspberry or chocolate sorbet. Over a period of six months in 2000, Customs classified the bars under subheading 2105.00.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Accordingly, Customs imposed a tariff rate of $0.517/kg + 17.5% <u>ad valorem</u>.

Pillsbury filed four protests in response to liquidations of these entries, arguing that the product should instead be classified under subheading 2105.00.50 or 0403.10.90.00--either of which may entitle the product to duty-free status under the North American Free Trade Agreement, 32 I.L.M. 289 (1993). The protests were denied by Customs, which confirmed classification under subheading 2105.00.40. Pillsbury complained to the trial court, which, after holding a full trial, issued a thorough and well-reasoned opinion upholding Customs' classification. Pillsbury now appeals to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

**II**

This court reviews the meaning ascribed by the trial court to HTSUS terms without deference. <u>Rollerblade, Inc. v. United States</u>, 282 F.3d 1349, 1352 (Fed. Cir. 2002). However, we review whether a particular import fits within those terms--including underlying findings of fact--for clear error. <u>Id.</u>

The classification of imported merchandise is governed by the General Rules of Interpretation ("GRI") to the HTSUS. <u>Orlando Food Corp. v. United States</u>, 140 F.3d 1437, 1440 (Fed. Cir. 1998). The GRI provide that a product's classification is

determined by first looking to the headings, and section or chapter notes. Absent contrary definitions in the HTSUS or legislative history, we construe an HTSUS term according to its common, commercial meaning. <u>Medline Indus. Inc. v. United States</u>, 62 F.3d 1407, 1409 (Fed. Cir. 1995).

Three HTSUS subheadings were put at issue in this case: 2105.00.40, 2105.00.50, and 0403.10.90.00. Subheading 0403.10.90.00 is a default provision for "yogurt" that falls outside the purview of several explanatory notes inapplicable here. Subheading 2105.00.40 covers "[i]ce cream and other edible ice" that is described in additional U.S. note 1 to chapter 4 and is not described in additional U.S. note 10 to chapter 4[2]; products falling outside the scope of additional U.S. note 1 default into subheading 2105.00.50.[3] Additional U.S. note 1 to chapter 4 states in relevant part:

> For the purposes of this schedule, the term "dairy products described in additional U.S. note 1 to chapter 4" means any of the following goods: malted milk, and <u>articles of milk</u> or cream. . . .

---

[2] It is undisputed that the Haagen-Dazs product is not described in additional U.S. note 10 to chapter 4.

[3] HTSUS Subheadings 2105.00.30 through 2105.00.50 provide for:

| 2105.00 | Ice Cream and other edible ice, whether or not containing cocoa: |
| | Ice cream: |
| | * * * |
| | Other: |
| | Dairy products described in additional U.S. note 1 to chapter 4: |
| 2105.00.30 | Described in additional U.S. note 10 to chapter 4 and entered pursuant to its provisions |
| 2105.00.40 | Other |
| 2105.00.50 | Other |

(emphasis added). Proper classification then turns on two issues. First, if the sorbet coating of the bars predominates over the frozen yogurt-ice milk core, then 2105.00.50 is the correct subheading. Second, if the core predominates, but the core is "yogurt" rather than an "article[ ] of milk", 0403.10.90.00 is the correct subheading.

**A**

Predominance is a factual determination which we review for clear error. Rollerblade, 282 F.3d at 1352. Although the parties do not dispute the underlying facts surrounding the product, the parties strongly disagree on the trial court's resulting inference that the frozen yogurt-ice milk core of the bars predominates. In reaching this conclusion, the trial court applied GRI 3(b) and the explanatory notes thereto. Rule 3(b) states that "[m]ixtures, composite goods consisting of different materials or made up of different components . . . shall be classified as if they consisted of the material or component which gives them their essential character." Explanatory Note VIII provides: "The factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods."

After entertaining evidence on both sides, the court found that the core of the bars provides its essential character. On the one hand, the sorbet coating constitutes a marginally greater percentage of the total weight and cost of the bars. In addition, the coating is "essential" to the manufacturing process and gives the bar its size and shape: the bar is produced by freezing sorbet in molds, sucking out the unfrozen center, and injecting the frozen yogurt-ice milk mixture into the void. On the other hand, Haagen-

Dazs markets the bar as "Fat Free Vanilla Frozen Yogurt Coated with Raspberry Sorbet"; the packaging states that "[w]e take rich, creamy Haagen-Dazs yogurt and dip it in incredibly smooth Haagen-Dazs sorbet . . . ." Also, when developing the product, Haagen-Dazs decided early on to use vanilla-flavored frozen yogurt in the core, but only finalized the sorbet flavorings after testing multiple options. The trial court relied upon Mead Corp. v. United States, 283 F.3d 1342 (Fed. Cir. 2002) (on remand from the Supreme Court), in determining that the marketing emphasis on frozen yogurt outweighed the evidence favoring the sorbet coating. This court in Mead stated that "[w]hile the importer's marketing of the goods will not dictate the classification, such evidence is relevant to the determination". Id. at 1349. The question as to which portion predominates is arguable, and Pillsbury has pointed to no clear error in the underlying finding of facts or the ultimate factual inference. As such, we affirm the trial court's determination on this issue.

**B**

In the alternative, Pillsbury argues that the bars are properly classified as "yogurt" under subheading 0403.10.90.00. Merchandise must be classified "in the condition in which it is imported." United States v. Citroen, 223 U.S. 407, 415 (1911) (quoting Worthington v. Robbins, 139 U.S. 337, 341 (1891)). The core of the dessert bar is made by mixing two ingredients: 12% by weight of a fermented "yogurt base", and the remaining 88% a "vanilla flavored ice milk base". Witnesses on both sides acknowledged that, when the two ingredients are mixed together, the mixture becomes a "fermented milk" that can no longer be separated. The fermented yogurt base is dispersed throughout the mixture, resulting in a core that is only partially fermented.

Thus, the component ingredients become irrelevant: as imported, the core is frozen, partially-fermented milk.

Accordingly, the trial court turned to the question of whether partially-fermented milk is "yogurt". There was expert testimony at trial establishing that the commercial definition of yogurt includes only fully-fermented milk[4] which has a titratable acidity of at least 0.15%. See Medline, 62 F.3d at 1409 (providing that a tariff term is to be construed according to its common commercial meaning). Because the Haagen-Dazs product core was only partially fermented and did not meet the requisite titratable acidity level, it did not meet the industry definition of "yogurt". This conclusion is consistent with General Note I (c) to chapter 4, which states that the chapter excludes "[i]ce cream and other edible ice (heading 21.05)". Thus, there is no clear error in the court's determination that frozen, partially-fermented milk cannot be categorized as "yogurt" and instead, falls under heading 2105.[5]

Finally, the trial court turned to the legal question of whether the phrase "article[ ] of milk" in additional U.S. note 1 to chapter 4 includes partially-fermented milk. We review this statutory construction de novo. Rollerblade, 282 F.3d at 1352. In the words of the trial court, the "items covered by 'dairy products described in additional U.S. note 1 to chapter 4' are broader than full cream milk or partially or completely skimmed milk." 341 F. Supp. 2d at 1297. We agree. The plain text of additional U.S. note 1 makes

---

[4] "Fully-fermented milk" is defined as milk that contains at least $10^7$ colony-forming units ("CFU") of active cultures per gram at the end of the stated shelf life.

[5] In a somewhat confusing use of language, the trade court continued to refer to the core as "yogurt" throughout its opinion. However, the court explained in a footnote that its chosen terminology was employed solely for convenience and did not constitute a finding of fact or conclusion of law. 341 F. Supp. 2d at 1292 n.3.

clear that the phrase "of milk" was intended to encompass more than just unaltered milk.  The note specifically includes "malted milk".  As such, partially-fermented milk can only be properly classified under subheading 2105.00.40.

### III

In sum, because Pillsbury has identified no clear error in the factual findings or error in the legal conclusions of the Court of International Trade, the judgment is

AFFIRMED.