Opinion concurring in part and dissenting in part filed by Circuit Judge BRYSON.
BRYSON, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority that this case must be decided under General Rule of Interpretation 3(b), which requires a determination as to the “essential character” of the devices in dispute. I also agree that we must uphold the trial court’s conclusion as to the proper classification of the disputed items unless we conclude that the court’s findings underlying the classification decision constitute clear error. And I agree with the majority’s conclusion that the “weather station” models do not fall under HTSUS heading 9025 as “thermometers, pyrometers, barometers, hygrometers ... and any combination of these instruments.” I therefore concur with the court that the weather station models must be classified under heading 9015 as “meteorological instruments and appliances.”
I disagree with the majority on one issue, however. As to the so-called “clock” models, i.e., models WS-8157, WT-5130, WT-5432, and WT-5442, I would uphold the trial court’s conclusion that those devices should be classified under HTSUS heading 9105 as “other clocks,” because the trial court permissibly found that the essential character of those models is that of electrically operated alarm clocks.
The trial court based its finding as to the essential character of the clock models on what the court called the “numerous and predominant clock-related functions and clock-related marketing.” The court noted that those models are sold by La Crosse in its catalog and website as either “Atomic” or “Projection” “clocks.” In its advertising, La Crosse refers to both the clock functions and the weather forecasting functions of the devices, but it features the clock functions more prominently, referring to those models variously as “Projection Alarm Clock,” “Projection Alarm Clock Atomic Precision,” “Wireless Atomic Projection Alarm,” “Projection Alarm Clock with Forecast,” “Projection Alarm Clock with Oscar Outlook Forecaster,” and “Atomic Digital Wall Clock with Forecast & Weather.” La Crosse’s marketing materials are important evidence of the items’ essential character. See The Pillsbury Co. v. United States, 431 F.3d 1377, 1380 (Fed. Cir.2005).
The time of day is the most prominent feature on each of the clock models, with the outdoor temperature and some indication of the forecast (based on an internal barometer) occupying a less prominent place in the device’s display panel. Most of the clocks project the time and temperature on the wall in large numbers. Each of the clocks also has other time-related functions, such as a time alarm with a snooze control, a perpetual calendar, time zone setting, and automatic updates for Daylight Savings Time.
Based on all that evidence, the trial court found that the forecasting function of the clocks was subsidiary to the clock functions and was insufficient to give the devices the “essential character” of meteorological equipment. To the contrary, the court found, the clock features and the *1363 “layout of the displays and marketing information” demonstrated “that the essential character of the Clocks is given by the clock component.”
Under General Rule of Interpretation 3(b), the trial court had only two choices with respect to the clock models: The “essential character” of the clock models was either as clocks that also had a weather forecasting function, or as weather forecasting devices that also had a clock function. The trial court concluded that the first category fit the “clock” models better than the second.
That is a quintessentially factual determination. I can see no justification for overriding the trial court’s factual finding on that issue and substituting this court’s judgment that the essential character of those four models is as weather-predicting instruments. It is doubtless true that each of the clock models is more expensive than it would be without the weather-related features. That would also be true, however, if each of the clocks had a daily updated listing of baseball scores or Dow Jones, Nasdaq, and S & P 500 averages at the bottom of the clock. Yet the inclusion of such a feature would not alter the “essential character” of the device from that of a clock to that of a sporting results monitor or a securities exchange reporting device. Because I do not believe the trial court committed clear error in its conclusion as to the “essential character” of the clock models, I respectfully dissent from this court’s ruling as to those four models.