Slip Op - 12-26

# UNITED STATES COURT OF INTERNATIONAL TRADE

---

LA CROSSE TECHNOLOGY, LTD.,

                    Plaintiff,

                v.

UNITED STATES,

                    Defendant.

Before: R. Kenton Musgrave, Senior Judge
Court No. 07-00114

---

**OPINION**

[On cross motions for summary judgment of classification of weather measurement devices and clocks, judgment in part for the plaintiff and in part for the defendant.]

Decided: February 29, 2012

Wm. Randolph Rucker, Drinker, Biddle & Reath, LLP, of Chicago, IL for plaintiff.

Amy M. Rubin, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With her on the brief were Tony West, Assistant Attorney General, and Barbara S. Williams, Attorney-In-Charge. Of counsel on the brief was Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Musgrave, Senior Judge:  Plaintiff La Crosse Technology, Ltd. ("La Crosse") challenges U.S. Customs and Border Protection's ("Customs") classification of imported weather measurement devices and clocks. Proper administrative protest procedure having been undertaken and all liquidated duties, taxes and fees having been paid, *see* 19 U.S.C. §§ 1514, 1515, jurisdiction is proper pursuant to 28 U.S.C. §1581(a).

*I. Facts*

Plaintiff La Crosse imports electronic devices which can measure, display and/or record various atmospheric and weather conditions.[1] In addition, the devices at issue function as clocks, displaying time, date and other temporal information. *Id.* All the merchandise involved here was classified upon liquidation as clocks, under Heading 9105, Harmonized Tariff Schedule of the U.S. ("HTSUS"). The subject merchandise includes wireless instruments to measure outdoor conditions and a base unit with built-in instruments to measure indoor conditions and analyze the weather data collected. Pl's Mat. Facts, ¶ 17. All the models include an LCD display and a microprocessor. Pl's Mat. Facts, ¶ 21. The base unit may contain a thermometer and a hygrometer (to measure humidity). Pl's Mat. Facts, ¶ 23. All models, save WT-5120, WS-8117, -8236, -8610, -9013 and -9210 contain barometers in the base unit which measure indoor air pressure. Pl's Mat. Facts, ¶ 30; Def. Exh. C, D.

Using a microprocessor, an algorithm analyzes the barometer's historical measurements to predict whether the weather will improve or deteriorate. Pl's Mat. Facts, ¶¶ 31, 35. The forecast is presented as a "tendency" arrow, a series of icons, or an image of a boy ("Oscar outlook") whose clothes indicate which type of weather is predicted. Pl's Mat. Facts, ¶¶ 38, 39. Depending on the model, the included outdoor instruments measure temperature, humidity, wind

---

[1] Plaintiff's Statement of Material Facts not in Dispute ("Pl's Material Facts"), ¶ 2. Unless otherwise noted, all facts cited in this opinion are undisputed. The model numbers involved here are: WS-1610,-2308, -2310, -2315, -2317, -3510, -3512, -3610, -7014, -7042, -7049, -7159, -7211, -7394, -7395, -8025, -8035, -8117, -8157, -8236, -8610, -9013, -9020, -9025, -9031, -9033, -9035, -9043, -9055, -9075, -9096, -9115, -9118, -9119, -9151, -9210, -9520, -9600, -9611, and WT-5120, -5130, -5432, and -5442 ("the Subject Merchandise"). *Id.*

speed, wind direction or rainfall. These measurements are transmitted wirelessly to the microprocessor in the base unit which processes and displays the data. Pl's Mat. Facts, ¶ 25.

The merchandise can be categorized generally according to the design, features and marketing which distinguish each category. The first category, which the court will identify as "Weather Stations" are characterized by the following features: an indoor display which typically shows time, date, temperature (indoor and/or outdoor), minimum/maximum temperature (in/out), indoor humidity percentage, and weather forecast based upon readings from the device's internal barometer.[2] These models are often identified in Plaintiff's marketing materials as Weather Stations. Def's Exh. A.

The second category are models advertised in La Crosse's "Professional" series. *Id*. These include the features of the Weather Stations, but also include wind and/or rain sensors as well as additional data storage and the ability to download weather data to a personal computer for

---

[2] Defendant's Exhibit A (La Crosse Tech. 2006 Catalog). Defendant objects to Plaintiff's use of the term Weather Station to refer generally to the devices at issue herein. Def's Memo in Support of its Cross-Motion for Summary Judgment ("Def's Memo"), at 1; Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl's Resp."), at 22 ("'weather station' encompasses all of the . . . products in this group"). The court uses the term in this opinion because it adequately summarizes the features common to these models. The court's adoption of the term has no bearing on the substance of this decision. The following 25 model numbers fall in the Weather Station category: WS-7014, -7042, -7049, -7159, -7211, -7394, -8025, -8035, -9013, -9020, -9025, -9031, -9033, -9043, -9055, -9075, -9096, -9115, -9118, -9119, -9151, -9210, -9520, -9600 and -9611.

analysis.[3] Most of the models in this category are also referred to in Plaintiff's marketing literature as "weather centers". Pl's Mat. Facts, ¶ 11.

The Clock models are described in La Crosse's literature as "Atomic Clocks" and "Projection Clocks". Pl. Exh. 4; Def. Exh. A. These models include digital clocks some of which project the time and temperature on a wall or ceiling. *Id*. The Clocks also include indoor/outdoor temperature displays and a weather forecast based on an internal barometer.[4] Plaintiff markets Models WS-8117, -8236 and -8157 as "Atomic Wall Clocks". Pl's Exh. 4; Def. Exh. A. Models WT-5120, -5130, and WT-5432 and -5442 are marketed as "Projection Alarm Clocks". *Id*. The Clocks all display the time in larger size type than the weather-related information. *Id.*

All of the models at issue display time and date. Pl's Mat. Facts, ¶ 14. All but one (WS-3512) display indoor temperature. *Id*. Thirty-three models have a time alarm; twenty-seven show indoor humidity. *Id*.

---

[3] Def's Exh. A. The following 11 model numbers fall in the Professional category: WS-1610, -2308, -2310, -2315, -2317, -3510, -3512, -3610, -7395, -9035 and -8610. The government conceded that Professional model numbers WS-2308, -2310, -2315, -2317, -3512 and -3610 are properly classified in Heading 9015, HTSUS, though it did not formally stipulate to that classification for those models. Defendant's Statement of Undisputed Material Facts ("Def's Mat. Facts"), ¶ 10.

[4] Def's Exh. A. The court notes that Plaintiff has withdrawn its claims regarding Models WS-8117, -8236 and WT-5120, which omit the barometer and which Plaintiff admits are classifiable in Heading 9105, HTSUS. Pl's Mat. Facts, ¶ 68. The remaining model numbers in the Clock category are: WS-8157, WT-5130, -5432 and -5442.

## II. Applicable Legal Standards

Proper tariff classification is determined by the General Rules of Interpretation ("GRIs") of the  Harmonized Tariff System of the U.S. ("HTSUS") and the Additional U.S. Rules of Interpretation. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).  The GRIs are applied in numerical order. *BASF Corp. v. United States*, 482 F.3d 1324, 1326 (Fed. Cir. 2007).  Classification is a question of law requiring ascertainment of proper meaning of relevant tariff provisions and determining whether the merchandise comes within the description of such terms. *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999).  Interpretation of the HTSUS begins with the language of the tariff headings and subheadings of the HTSUS and their section and chapter notes, and may also be aided by the Explanatory Notes published by the World Customs Organization. *Trumpf Med. Sys., Inc. v. United States*, 34 CIT ___, ____, 753 F.  Supp. 2d 1297, 1305-1306 n. 20 (2010).

Both parties move for judgment pursuant to USCIT Rule 56, which is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court will grant a motion for summary judgment "if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." USCIT R. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule

56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-587 (1986) (footnote omitted).

*Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

### III.  Competing Tariff Provisions

La Crosse classified the subject merchandise under subheadings 9025.80.10, 9026.10.20, 9105.21.40, and 9105.91.40, HTSUS.[5]  Customs reclassified the merchandise at liquidation under HTSUS subheading 9105.91.40, as "other clocks." Pl's Mat. Facts, ¶ 4.  Based on its review of the merchandise during this litigation, the government has abandoned the classification under subheading 9105. 21.40 and 9105.91.40, HTSUS, imposed upon liquidation for several models.  Def's Memo, at 5.

The subheadings at issue are as follows:

9015: Surveying (including photogrammetrical surveying), hydrographic, oceanographic, hydrological, meteorological or geophysical instruments and appliances, excluding compasses; rangefinders; parts and accessories thereof:[6]

9015.80          Other instruments and appliances [than rangefinders, theodolites, tachymeters, levels, and photogrammetrical surveying instruments and appliances];
                          Other [than optical instruments and appliances]:
9015.80.80                    Other [than seismographs] . . . . . . . . . . . . . . . Free

[5]  Pl's Mat. Facts, ¶ 3.

[6]  The Explanatory Notes to Heading 9025 explain that it includes "combinations of [hydrometers, thermometers, barometers, hygrometers, psychrometers], except when the addition of one or more other devices gives the combination the character of equipment or appliances covered by more specific headings (*e.g*., **heading 90.15** as meteorological instruments)." (emphasis in original).

9025    Hydrometers and similar floating instruments, thermometers, pyrometers, barometers, hygrometers and psychrometers, recording or not, and any combination of these instruments; parts and accessories thereof:[7]

Thermometers and pyrometers, not combined with other instruments:

9025.19            Other [than liquid filled]:

9025.19.80                Other [than pyrometers] . . . . . . . . . . . . . . . . . . . .1.8%

9025.80      Other instruments:

9025.80.10            Electrical . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1.7%

9105    Other clocks [than wrist watches, pocket watches and other watches, clocks with watch movements, and instrument panel clocks]:

Wall clocks:

9105.21            Electrically operated:

9105.21.40                With opto-electronic display only . . . . . . . .. . .3.9% on the movement and case + 5.3% on the battery

Other:

9105.91            Electrically operated:

9105.91.40                With opto-electronic display only . . . . . . . .. . .3.9% on the movement and case + 5.3% on the battery

*IV. Analysis*

After considering the parties' motions, the court finds that there are no material facts in dispute and that the matter may be resolved summarily. The Weather Stations are properly classified in subheading 9025.80.10, HTSUS, the Professional models in subheading 9015.80.80,

---

[7] The Explanatory Notes to Heading 9015 exclude "thermometers, barometers, hygrometers and psychrometers [and] combinations of such instruments (**heading 90.25**)." (Emphasis in original). The notes explain that it does include wind direction indicators, anemometers and rain gauges.

HTSUS, and the Clocks in subheading 9105.91.40, HTSUS. For the following reasons Plaintiff's

Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment are each

granted in part and denied in part.

### A. Parties' Contentions

Plaintiff argues that the subject merchandise should be classified as meteorological

devices in Heading 9015, HTSUS, or as combination devices in Heading 9025, HTSUS.

> [T]he Subject Merchandise falls into two categories, forecasting weather stations and
> other weather stations, which will be classified, in accordance with the General Rules
> of Interpretation ("GRI"), under one of two HTSUS headings based on (1) a
> "principal use" analysis pursuant to GRI 1; (2) a rule of relative specificity analysis
> pursuant to GRI 3(a); or (3) an essential character analysis pursuant to GRI 3(b).
> Specifically, Plaintiff contends that three of the weather station models are properly
> classified in HTSUS heading 9025 (model numbers WS-8610, WS-9013, and
> WS-9210), while the remaining weather models stations [*sic*] belong to a class of
> articles that are more specifically described as "meteorological appliances" in
> HTSUS Heading 9015.[8]

Plaintiff argues that Heading 9015 (meteorological instruments) is preferable to

Heading 9105 (clocks) because the articles are "more than" clocks. "The forecasting weather

---

[8] Pl's Memo in Support of its Motion for Summary Judgment ("Pl's Memo"), at 2-3.
Plaintiff argues that classification under Heading 9015 requires proof of principal use. See
Additional U.S. Rule of Interpretation 1(a), HTSUS. But Heading 9015 provides for
"meteorological instruments," not "instruments used for meteorology". Cf., *Primal Lite, Inc. v.
United States*, 182 F. 3d 1362, 1363 (Fed. Cir. 1999) ("Subheading 9405.30.00 is a 'use' provision,
because the classification decision turns on whether the imported lighting sets are 'of a kind used
for Christmas trees.'"). An anemometer, for example, is listed as a meteorological instrument in the
Explanatory Notes to Heading 9015, and thus is classifiable *eo nomine* under Heading 9015.
Although the subject merchandise can be used for more than one purpose, that is simply a reflection
of each models' multiple features. The merchandise does not consist of a single item subject to
multiple uses. See, *e.g., St. Eve International, Inc. v. United States*, 267 F. Supp. 2d 1371, 1374
(CIT, 2003) ("underwear" or "tops" classifications controlled by use). The court finds that Plaintiff
failed to prove that Heading 9015 was a "use" provision, and that it also failed to provide enough
admissible use-related evidence to prove its case in any event.

stations are much more than clocks as they are not essentially constructed for indicating the time of day." Pl's Memo, at 13, citing *Casio, Inc. v. United States*, 73 F.3d 1095, 1097 (Fed. Cir. 1996). According to Plaintiff, the "unique function" of weather forecasting takes the devices "beyond the scope of devices covered by headings 9025 and 9105." Pl's Memo, at 13. Based on two definitions of "meteorology", Plaintiff argues that Heading 9015 should include all its "weather forecasting instruments and appliances". Pl's Memo, at 13-14.

The government counters that GRI 1 is inapplicable because the subject merchandise contain a variety of features and thus are composite goods classified pursuant to GRI 3. "A tariff heading that does not - and can not - describe all features, functions and components of an imported product does not wholly encompass that product and can not provide the correct classification of the product under GRI 1." Def's Memo, at 15 (emphasis omitted). "In effect, La Crosse seeks to have the Court classify the bulk of its products based upon only two of many components - a barometer and a microprocessor." Def's Memo, at 12. The government argues:

> Because no single tariff heading describes all of the features, functions and components of any product at issue, analysis under GRI 1 is not appropriate here. The proper classification of these products can only be determined in accordance with GRI 3 with consideration given to the entire range of components, features and functions possessed by each individual item. La Crosse's theories, under which its "forecasting" products are all classifiable in Heading 9015 and its "other" products are classifiable in Heading 9025, lack both legal and factual support.

Def's Memo, at 7.

### B. GRI 1 Analysis

Plaintiff argues that the subject merchandise is *prima facie* classifiable using GRI 1. "[I]f a heading describes the forecasting weather stations, they should be classified under that heading." Pl's Memo, at 10 (citation omitted). Yet Plaintiff admits that its preferred heading only

covers part of the goods involved. *Id.* Under GRI 1, goods are classifiable according to the terms of the headings and applicable section and chapter notes. Where, as here, goods can be classified under more than one heading, GRI 1 is not suitable. Rather, GRI 3 applies because the subject merchandise is *prima facie* classifiable under more than one heading.

C. GRI 3 Analysis

GRI 3 provides:

3. When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:

(a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

(b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

(c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

The CAFC has outlined the analytical framework for GRI 3:

The [GRI] of the [HTSUS] help determine which subheading should govern the duty to be assessed on imports of these [subject goods]. According to the GRI 3(a), when 'goods are, *prima facie*, classifiable under two or more headings,' the court must choose the heading providing the most specific description. This is the so-called relative specificity test. GRI 3(a) provides an exception to the applicability of this test, however, when two or more headings each refer . . . to only part of the items [ ]. 'Pursuant to GRI 3(b), goods not classifiable under GRI 3(a) are classified by the 'component which gives them their essential character.' This is the so-called

essential character test.  GRI 3(c) provides a default rule for goods not classifiable after resort to either GRI 3(a) or (b).

*Home Depot, USA, Inc. v. United States,* 427 F. Supp. 2d 1278, 1292 (CIT 2006), affirmed 491 F.3d 1334 (Fed. Cir. 2007), citing *Better Home Plastics Corp. v. United States*, 119 F.3d 969, 971 (Fed. Cir.1997).

1. GRI 3(a) Relative Specificity Analysis

Plaintiff argues the merchandise is classifiable according to GRI 3(a)'s relative specificity analysis.  However, as pointed out in *Toy Biz, Inc. v. United States*, 26 CIT 816, 826, 219 F. Supp. 2d 1289, 1300 (2002), that rule does not apply where the competing headings cover only part of the goods in question.

> Toy Biz ignores the express caveat to GRI 3(a)'s rule of 'relative specificity.' That caveat, set forth in the second sentence of the GRI 3(a), provides that where — as here — the competing headings 'each refer to part only' of the composite good, 'those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.' See GRI 3(a).

*Toy Biz,* 26 CIT at 826, 219 F.Supp.2d at 1300; see also *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246, 1252 (Fed. Cir. 2004).  Because the base units could be classified in two combinations of headings (9015/9105 or 9025/9105), under GRI 3(a) the competing headings are deemed equally specific and analysis under GRI 3(b) is appropriate.

## 2. GRI 3(b) Analysis

The analysis next proceeds to GRI 3(b), which according to the Explanatory Notes to GRI 3 applies only to mixtures, composite goods and goods put up in sets for retail sale. Explanatory Note (VI) to GRI 3(b). The parties assume that the subject merchandise falls under GRI 3 because it consists of composite goods. See Pl's Memo, *passim*, and Def's Memo, at 32 ("[E]ach product at issue is a composite good"). But neither party analyzes whether the subject merchandise satisfies the requirements applicable to composite goods. The Explanatory Notes to GRI 3 explain that composite goods are as follows:

> [C]omposite goods made up of different components shall be taken to mean not only those in which the components are attached to each other to form a practically inseparable whole but also those with separable components, **provided** these components are adapted one to the other and are mutually complementary and that together they form a whole which would not normally be offered for sale in separate parts.[9]

GRI 3 composite goods must be fitted together, physically attached or attachable. The subject merchandise base units qualify as composite goods because they include both clock and weather components. However, almost all models of the subject merchandise include at least one

_____

[9] Explanatory Note (IX) to GRI 3(b) (emphasis in original). *Cf.* Explanatory Note (VI) to Section XVI, HTSUS, which explains that for the composite goods of Note 3, Section XVI, "[a]ssemblies of machines should not be taken to be fitted together to form a whole unless the machines are designed to be permanently attached either to each other or to a common base, frame, housing, etc." The court notes that in this case the result would be the same under Rule 3 to Section XVI.

wireless sensor which is designed to be placed outdoors away from the indoor base unit.[10]  The

applicable rules differ depending on the category of goods involved.

3. The Weather Stations are Composite Goods

The Weather Stations can be classified as GRI 3(b) "composite goods," despite the

inclusion of the wireless components that do not attach to the base unit because the wireless outdoor

sensors constitute accessories to the base units.  See *Toy Biz*, 26 CIT at 829, 219 F.Supp.2d at 1302

(film cartridges constituted accessories to projectors).  Under Chapter 90 Rule 2(a), accessories

which are goods included in a Chapter 90 heading "are in all cases to be classified in their respective

headings."  Heading 9025, under which the Weather Stations' outdoor thermometers and

hygrometers would be separately classified, provides for "thermometers, . . . barometers,

hygrometers and psychrometers, recording or not, *and any combination of these instruments*; parts

and accessories thereof."  All the Weather Stations contain either thermometers or barometers in the

base unit.  Therefore, the models including wireless thermometers and hygrometers can be classified

together because Heading 9025 provides for "any combination" of instruments covered by that

heading.

---

[10]  Def's Exh. A.  Model 8236, "Atomic Digital Wall Clock" is the only model of the subject merchandise unequipped with an external wireless sensor.  Plaintiff has conceded that this model is classifiable as a clock under Heading 9105, HTSUS.

4. Clocks and Professional Models are Retail Sets

The analysis for Clocks and Professional models under Headings 9105 and 9015 is different. The Explanatory Notes to Heading 9015 (meteorological instruments) provide that the heading includes wind and rain sensors. Under Chapter 90 Note 2(a), those sensors are classifiable with the Professional base units under Heading 9015. However, the Professional models also include wireless temperature sensors classifiable pursuant to Note 2(a) under Heading 9025.[11] Because the wireless sensors do not attach to the base units, they cannot be analyzed as composite goods.

Note 2(a) requires that Heading 9025 sensors should be classified separately from the base units. Therefore the court must determine whether the Professional units can be classified under GRI 3(b)'s "retail sets" provision. A GRI 3(b) retail sets analysis is also necessary for the Clocks because they also include wireless sensors otherwise classifiable in Heading 9025.

The Explanatory Notes to GRI 3(b) explain:

(X) For the purposes of this Rule, the term "goods put up in sets for retail sale" shall be taken to mean goods which:

(a) consist of at least two different articles which are, *prima facie*, classifiable in different headings. Therefore, for example, six fondue forks cannot be regarded as a set within the meaning of this Rule;

(b) consist of products or articles put up together to meet a particular need or carry out a specific activity; and

(c) are put up in a manner suitable for sale directly to users without repacking (*e.g.*, in boxes or cases or on boards).

_____

[11] Model WS-3512 does not include a temperature sensor classifiable under Heading 9025, only a wireless wind sensor also classifiable in Heading 9015. However the same retail sets analysis described *infra* applies to Model WS-3512 as to the other Professional models.

Explanatory Note (X) to GRI 3(b) (2007).  Criteria (a) is satisfied in this case for the reasons set forth above.  Likewise undisputed is the fact that the subject merchandise is sold at retail and therefore satisfies criteria (c).  Pl's Mat. Facts, ¶ 48; Pl. Exh. 5 (retail packaging).  The remaining issue is whether the subject merchandise consists "of products or articles put up together to meet a particular need or carry out a specific activity."  Customs has summarized the particular need/specific activity requirement as requiring "a relationship between the articles contained in a group, and such relationship must establish that the articles are clearly intended for use together for a single purpose or activity to comprise a set under GRI 3(b)."  CBP Informed Compliance Publication, *Classification of Sets* (2004) ("Sets ICP"), at 12.  The Sets ICP summarizes the rule as follows: "for goods put up together to meet the 'particular need' or 'specific activity' requirement and thereby be deemed a set, they must be so related as to be clearly intended for use together or in conjunction with one another for a single purpose or activity."  Sets ICP, at 12.

The court finds that the base units and wireless sensors are closely related to the specific activity of monitoring weather conditions.  The sensors detect weather-related conditions and relay that information to the base units, which display the information to the user.  The two items are linked together by wireless signals which transmit the instrument data for processing and display on the base unit.  The devices' ability to connect wirelessly alone demonstrates that the sensors and base units are clearly intended to be used together.  That the connection is used to transfer weather data shows that the use is related to the single purpose of weather monitoring. Even where the essential character of a model is given by the clock component, the relationship between the base unit and weather sensors is sufficient to qualify as a "retail set" under GRI 3(b).

D. Essential Character

Resort to GRI 3's essential character rule to classify each of the categories of models is required. As Defendant points out, "[w]hether the combination remains classifiable in Heading 9025 or is to be classified in another heading, such as Heading 9015 or Heading 9105 depends on which of the components of the La Crosse product imparts the essential character." Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, at 8. The Explanatory Notes to GRI 3(b) state "[t]he factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." Explanatory Note (VIII) to GRI 3(b) (2007).

In this case the essential character of the devices can be determined by their primary functionality and marketing. See *The Pillsbury Co. v. United States*, 431 F. 3d 1377, 1380 (Fed. Cir. 2005), citing *Mead Corp. v. United States*, 283 F.3d 1342 (Fed. Cir. 2002) (marketing information relevant to essential character inquiry). Although the agreed facts are meager, they are sufficient to answer the question before the court. The models share common essential characteristics among the categories.

1. Weather Station Classification

The Weather Stations are marketed by La Crosse as "Wireless Temperature Stations" or "Wireless Weather Stations". Def. Exh. A. They have a concentration of weather-related features which predominate in number over the clock functions. For example, Model WS-7394 includes an outdoor temperature sensor, indoor barometer and humidity sensors, a display featuring a barometric pressure arrow, barometric history graph, weather forecast capability, temperature (in/out) readings,

and recording of temperature minimums and maximums. *Id.* The clock functions include atomic time/date, time display, update to DST and perpetual calendar. *Id.* The amount of display space devoted to the weather functions predominates over the clock information displayed on the Weather Stations. Def. Exh. A. For these reasons the essential character of the Weather Stations is given by the weather-related functions and marketing, which predominate over their clock-related functions.

Heading 9015, HTSUS, provides for meteorological instruments and appliances. The Explanatory Notes to that Heading explain that it "does not cover thermometers, barometers, hygrometers and psychrometers, nor combinations of such instruments (**heading 90.25**)." Explanatory Note (V) to Heading 9015 (emphasis in original). The Explanatory Notes to the competing Heading 9025 explain that the latter heading includes combination instruments "except when the addition of one or more *other* devices gives the combination the character of equipment or appliances covered by more specific headings (*e.g.*, **heading 90.15** as meteorological equipment)." Explanatory Note to Heading 9025 (italics supplied, other emphasis in original).

Plaintiff argues that the inclusion of the Weather Stations' forecasting feature, by itself, is sufficient to change their character from a combination instrument of Heading 9025 to meteorological equipment of Heading 9015. Pl's Memo, at 16. Plaintiff also claims that the Weather Stations should be classified in Heading 9015 because their combination of barometers, thermometers, hygrometers and forecasting capabilities make them "more than" the devices restricted to Heading 9025 by the Explanatory Notes. "The forecasting weather stations are more than a simple combination of the named instruments of heading 9025 or a simple clock of heading 9105, they are weather forecasters [which] automatically perform the complex task of measuring,

recording, and analyzing specific meteorological data to calculate a forecast of future weather conditions." Pl's Memo at 13.

The forecasting function is based on measurements by the barometer in the base unit, and not on any measurement by a device of the kind listed in the Explanatory Notes to Heading 9015. The use of a "tendency arrow" or "Oscar outlook" icons show the Weather Stations' forecasts are imprecise and lack the character of meteorological equipment. The forecasting function touted by Plaintiff is the updated digital equivalent of the arm on an analog barometer dial that marks the barometer's current position, and which is used to determine air pressure (and thus weather) tendencies by later consultation to determine whether the air pressure is rising or falling. The forecasting capability does not give the Weather Stations the character of Heading 9015's meteorological equipment.

Plaintiff argues that the Weather Stations' wireless instruments make them akin to the "radio-sonde" devices described in the Explanatory Notes to Heading 9015 and excluded by those for Heading 9025. Pl's Resp., at 16. A "radiosonde" is "a balloon-borne instrument for the simultaneous measurement and transmission of meteorological data . . . ." McGraw-Hill *Dictionary of Scientific and Technical Terms* (4th Ed., 1989), at 1557; see also Def. Exh. N (NIS Radiosonde Fact Sheet). Although a radio-sonde includes many of the same instruments as Plaintiff's Weather Stations, Plaintiff's analogy is inapt because the character of an instrument designed to be borne aloft by a weather balloon is different from one designed to be placed in one's living room. The first is of a professional meteorological nature, the second (in this case) is not.

The Weather Stations are combination thermometers/barometers/hygrometers, and are clearly covered by Heading 9025's "combinations" language. They lack the wind or rain sensors

of the Professional models.[12]   The Explanatory Notes to Heading 9025 reinforce the court's conclusion that the Weather Stations are properly classifiable under subheading 9025.80.10, as other electrical instruments.

## 2. Professional Models Classification

The essential character of the Professional models is also given by their weather-related functions because they overwhelmingly predominate over the clock functions.  What distinguishes them for classification purposes from the Weather Stations is the inclusion of wind and rain sensors, as well as the ability to download weather data to a computer for further analysis.[13]  See Explanatory Note (V) to Heading 9015 (stating Heading 9015 includes anemometers and rain gauges and indicators).  For example, Model WS-2315 includes the same weather functions as Model WS-7394, but adds outdoor sensors for humidity, rainfall and wind speed and direction.  It also adds an outdoor humidity display and history function, as well as dew point-, wind- and rain-related functions not found on the WS-7394.  The only additional clock feature is a time alarm compared to the WS-7394.  For these reasons, therefore, the essential character of the Professional models is given by their meteorological functions.[14]  The additional features give the Professional models the

---

[12]  Plaintiff cites to ruling NY 854184, dated July 24, 1990, to support its argument that the Weather Stations should be classified under Heading 9015.  Pl's Resp., at 7.  However, the device classified in NY 854184 included wind speed and rain sensors, which the Weather Stations lack.

[13]  Models WS-3510 and -8610 lack wind or rain sensors, but retain the character of meteorological instruments because they store large amounts of weather data and transmit that data to a PC for analysis.

[14]  The court also notes the concession by the government that many of these models are classifiable in Heading 9015.

character of meteorological instruments of Heading 9015, and they are properly classified in subheading 9015.80.80, HTSUS.

### 3. Clocks Classification

The Clocks are distinguished by their numerous and predominant clock-related functions and clock-related marketing. They are sold by Plaintiff as either "Atomic" or "Projection" clocks in Plaintiff's catalog and on their website. They display time in larger type size than weather information. Most project the time and temperature on the wall in large numbers. The array of time-related features is equal or greater than the weather-related functions. All but Model WS-5130 omit the humidity sensor and related functions.[15] The forecasting function of the Clocks is insufficient to give them the character of Heading 9015 meteorological equipment for the same reasons described above for Weather Stations. The clock features, layout of the displays and marketing information demonstrate that the essential character of the Clocks is given by the clock component. They are properly classified as entered, under subheading 9105.91.40.

---

[15] Model WS-5130 shares most of the same features with Model WS-9520, though the WS-5130 lacks an outdoor humidity sensor and barometric readout. WS-5130 is marketed as a "Projection Alarm Clock with Oscar Outlook Forecaster", while WS-9520 is marketed as a "Wireless Projection Forecast Station with Oscar Outlook Forecaster". Because it lacks weather functionality and is marketed as a clock, the essential character of Model WS-5130 is given by its clock-related functions.

## *V. Conclusion*

For the reasons set forth above, the court finds that the subject merchandise is classifiable in part under subheadings 9025.80.10 (Weather Station models), 9015.80.80 (Professional models) and 9105.91.40 (Clock models). Judgment will therefore enter in part in favor of the Plaintiff and in part in favor of Defendant.

_____/s/_____

R. Kenton Musgrave, Senior Judge

Dated: February 29, 2012

      New York, New York