# United States Court of Appeals for the Federal Circuit

---

**THE GERSON COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1011

---

Appeal from the United States Court of International Trade in No. 1:11-cv-00225-TCS, Chief Judge Timothy C. Stanceu.

---

Decided: August 6, 2018

---

RALPH H. SHEPPARD, Meeks, Sheppard, Leo & Pillsbury, Fairfield, CT, argued for plaintiff-appellant.

HARDEEP KAUR JOSAN, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by AMY RUBIN, JEANNE DAVIDSON, CHAD A. READLER.

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, for amici curiae Target General Merchandise Inc., Accent-Fairchild Group Inc., All Season Imports,

Inc., American Lighting Inc., The Gordon Companies, Inc., Illumination International LLC, Imagine Nation Books, Ltd., Lamrite West Inc., LED Power Inc., Precision Lighting & Transformer, Inc., RDA Lighting Inc., Service Lighting & Electrical Supplies, Inc., US LED, Ltd. Also represented by RICHARD F. O'NEILL, RUSSELL ANDREW SEMMEL.

————————————

Before LOURIE, O'MALLEY, and CHEN, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

The Gerson Company appeals a decision of the United States Court of International Trade ("Trade Court") granting summary judgment in favor of the government. *See Gerson Co. v. United States*, 254 F. Supp. 3d 1271 (Ct. Int'l Trade 2017). In that decision, the court classified Gerson's imported light-emitting diode ("LED") candles under subheading 9405.40.80 of the Harmonized Tariff Schedule of the United States ("HTSUS")—which covers certain "[l]amps . . . not elsewhere specified or included"— rather than under subheading 8543.70.70—which covers "[e]lectrical machines and apparatus," including "[e]lectric luminescent lamps." We agree with the Trade Court's classification, and, accordingly, affirm.

## I. BACKGROUND

### A. The Subject Merchandise

Gerson's imported merchandise consists of finished decorative candle and tea light lamps made of plastic and/or wax. The lamps are designed to resemble ordinary candles, such as votive, pillar, taper, or tea light candles. Unlike ordinary candles, however—which generate light by using a wick to vaporize wax—Gerson's candles use battery-operated LEDs. Gerson does not dispute that its candles serve both decorative and illuminative functions. *See* Oral Arg. at 1:10–25, *Gerson Co. v. United States* (No.

2018-1011), http://oralarguments.cafc.uscourts.gov/ default.aspx?fl=2018-1011.mp3.

Between January and October 2009, Gerson imported twenty-seven entries of its candles through the Port of Kansas City, Missouri. U.S. Customs and Border Protection ("Customs") liquidated the merchandise under HTSUS subheading 9405.40.80, which imposes a duty rate of 3.9% *ad valorem*. That provision reads[1]:

> 9405 Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included:
>
> 40 Other electric lamps and lighting fittings:
>
> 80 Other…………………….………….3.9%

Gerson objected to Customs' classification in four administrative protests, arguing that its candles should have been classified under subheading 8543.70.70, which imposes a duty rate of 2% *ad valorem*. That provision reads:

> 8543 Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof:
>
> 70 Other machines and apparatus:
>
> 70 Electric luminescent lamps………..2%

Customs denied each of Gerson's protests, leading Gerson to file suit in the Trade Court.

---

[1] We cite here to the 2009 version of the HTSUS in effect when Gerson imported the merchandise at issue.

B.  Procedural History

Presented with cross-motions for summary judgment, the Trade Court granted judgment in favor of the government, finding that Customs properly classified Gerson's candles under subheading 9405.40.80 (certain "[l]amps . . . not elsewhere specified or included") rather than 8543.70.70 ("[e]lectrical machines and apparatus," including "[e]lectric luminescent lamps"). *Gerson*, 254 F. Supp. 3d at 1281.

The court observed that it is at least "plausible" to read heading 8543 as covering Gerson's candles to the extent they qualify as "electrical machines and apparatus." *Id.* at 1276. But the court rejected that reading as impermissibly expanding the scope of heading 8543 and unduly narrowing the scope of heading 9405. *Id.* at 1277–78. The court also determined that such a reading would be inconsistent with the World Customs Organization's Harmonized Commodity Description and Coding System ("HS") Explanatory Notes ("ENs"), which suggest that chapter 94 is reserved for finished household lamps like Gerson's candles, while chapter 85 is reserved for unfinished lamps used in conjunction with other electrical devices. *Id.* at 1278–80. The court therefore classified the candles under subheading 9405.40.80. *Id.* at 1281.

Gerson timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

"We review a grant of summary judgment by the Court of International Trade for correctness as a matter of law and decide de novo the proper interpretation of the tariff provisions as well as whether there are genuine issues of material fact to preclude summary judgment." *Otter Prods., LLC v. United States*, 834 F.3d 1369, 1374–75 (Fed. Cir. 2016). "Although we review the decision[] of the [Trade Court] de novo, we give great weight to the

informed opinion of the [Trade Court] and it is nearly always the starting point of our analysis." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (internal quotation marks omitted).

Classifying articles under the HTSUS is a two-step process. A court first determines the proper meaning of specific terms in the tariff provisions, which is a question of law that we review without deference. *Otter Prods.*, 834 F.3d at 1375. Next, the court determines under which subheading the subject merchandise is most appropriately classified, which is a question of fact that we review for clear error. *Id.* But when, as here, there is no dispute as to the nature of the merchandise, the two-step classification analysis "collapses entirely into a question of law." *Id.* (internal quotation marks omitted).

For the reasons stated below, we agree with the Trade Court that Gerson's candles fall within heading 9405 rather than heading 8543. We also agree with the court that Gerson cannot use subheading 8543.70.70 to expand the scope of heading 8543.

A. The Trade Court Correctly Classified Gerson's Candles Under Heading 9405 Rather than Heading 8543

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Id.* (internal quotation marks omitted). "The proper classification of merchandise entering the United States is governed by the General Rules of Interpretation ('GRIs') of the HTSUS and the Additional United States Rules of Interpretation."[2] *Id.*

---

[2] The Additional United States Rules of Interpretation are not relevant here because they govern particular

We apply the GRIs in numerical order, beginning with GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013). And, where an "imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *Id.* (internal quotation marks omitted).

We therefore begin, as we must, "with the language of the headings." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). The two competing headings at issue here are headings 9405 and 8543. The former covers "[l]amps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included." The parties agree that Gerson's candles qualify as "lamps," as that term is commonly understood. For a lamp to be classifiable under heading 9405, however, the plain language of the heading requires that the lamp not be "elsewhere specified or included," meaning that the lamp must not be covered by any other heading in any chapter of the HTSUS. This criterion is consistent with chapter 94's Note 1(f), which excludes from chapter 94's scope "[l]amps or lighting fittings of chapter 85." Gerson does not contend on appeal that its candles fall within any chapter *other* than chapter 85, nor does it contend that its candles fall within any heading other than 8543. Thus, if Gerson's candles are classifiable under heading 8543, the terms of heading 9405 and Note 1(f) preclude classification under heading 9405.

Heading 8543 covers "[e]lectrical machines and apparatus, having individual functions, not specified or includ-

---

use and textile provisions not at issue in this case. *See* ARI 1(a)–(d); *see also Schlumberger*, 845 F.3d at 1163 n.5.

ed elsewhere in this chapter." As an initial matter, the heading does not refer to "lamps," which both parties agree Gerson's candles are.[3] And, as the Trade Court observed, the term "electrical machines and apparatus" recited in heading 8543 "is not free of ambiguity" standing alone. *Gerson*, 254 F. Supp. 3d at 1277. On the one hand, it is "plausible" to read heading 8543 broadly as encompassing Gerson's candles, at least in a "hyper-technical sense," because the candles use electricity to operate and therefore arguably qualify as "electrical machines and apparatus." *Id.* at 1276–77. On the other hand, the terms "machine" and "apparatus" generally connote equipment designed specifically to carry out a particular function. *See* Webster's New World College Dictionary 67 (4th ed. 2009) (defining "apparatus" to mean "any complex device or machine for a specific use"); *id.* at 860 (defining "machine" to mean "a structure consisting of a framework and various fixed and moving parts, for doing some kind of work" and "any device thought of as functioning in such a way, as . . . an electronic computer").[4] Those terms

---

[3]  Given that heading 8543 does not refer to "lamps," it is questionable whether the plain language of heading 9405 and chapter 94's Note 1(f)—which each exclude from chapter 94's scope only *"lamps"* specified elsewhere—preclude classification of Gerson's lamps in heading 9405. In contrast to heading 8543, headings 8513 (certain "[p]ortable electric lamps designed to function by their own source of energy") and 8539 ("[e]lectrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps") *do* refer to "lamps." Gerson does not argue on appeal that its candles are classifiable under either of these headings, however.

[4]  The parties do not proffer dictionary definitions for the terms "machine" or "apparatus." We nevertheless take judicial notice of the common dictionary definitions

would seem *not* to cover Gerson's candles, which are decorative articles that also serve an illuminative function. *Cf. La Crosse*, 723 F.3d at 1359 (rejecting classification under GRI 3(b) predicated on a failure to acknowledge "the key function of the devices at issue").

Heading 8543's scope becomes clearer, however, when read in context of the HTSUS as a whole. The provision does not exist in a vacuum, and we must read it in conjunction with other relevant provisions to discern its meaning. *See id.* at 1361 (reading headings "together and viewed in light of their respective Explanatory Notes" to conclude that they "set out mutually exclusive categories of meteorological devices"); *cf. King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) ("[O]ftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions." (citations and internal quotation marks omitted)).

When so read, the HTSUS makes clear that Gerson's candles belong in heading 9405 rather than in heading 8543. If one were to read heading 8543 as covering Gerson's candles, it would cover *every* electric lamp, because all such lamps use electricity to generate light. And, by operation of Note 1(f), such lamps could not be classified under heading 9405. In other words, heading 9405 would be constrained to only *non*-electric lamps. That reading, as the Trade Court noted, "would impose a specific, and drastic, limitation on the scope of heading 9405, HTSUS that the article description for that heading does not express or suggest." *Gerson*, 254 F. Supp. 3d at 1278. In

of those terms. *See Stewart-Warner Corp. v. United States*, 748 F.2d 663, 669 (Fed. Cir. 1984).

fact, such a reading would effectively remove electric "searchlights" and "spotlights" from heading 9405 even though those devices are expressly provided for in that heading. *See* HTSUS Hdg. 9405 ("Lamps and lighting fittings including *searchlights and spotlights* and parts thereof" (emphasis added)). We agree with the Trade Court, therefore, that Gerson's candles do not fall within heading 8543.

The ENs to the relevant chapters further support the Trade Court's ruling.[5] *See Otter Prods.*, 834 F.3d at 1375 ("After consulting the headings and section or chapter notes, we may also consult the World Customs Organization's Explanatory Notes, which accompany each chapter of the HTSUS."); *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1363 (Fed. Cir. 2011) ("Although not binding, where a tariff term is ambiguous the Explanatory Notes may provide persuasive and clearly relevant guidance to the meaning of the term." (internal quotation marks omitted)). Explanatory Note 94.05, for example, states that the term "lamps" in heading 9405 refers to lamps "constituted of *any* material" and that use "*any* source of light," including "electricity." EN 94.05(I) (emphases added). That EN also provides examples of lamps that fall within the heading and includes those that are "normally used for the illumination of rooms" such as "chandeliers" and "table lamps," as well as "[c]andelabra" and "candlesticks." *Id.*; *see also Pomeroy Collection, Ltd. v.*

---

[5] Unlike the HTSUS section and chapter notes—such as chapter 94's Note 1(f)—the ENs "are not legally binding or dispositive, but they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011). We cite here to the 2007 version of the ENs that were in effect when Gerson imported its merchandise.

*United States*, 559 F. Supp. 2d 1374, 1386 (Ct. Int'l Trade 2008) (noting that heading 9405 covers "candle holders and candle lamps"). The notes therefore suggest that chapter 94 was intended to include at least finished, standalone electric lamps used in the home.

Chapter 85's ENs, by contrast, state that chapter 85 includes "[c]ertain electrical goods *not generally used independently*, but designed to play a particular role as components, in electrical equipment," including "[e]lectrical filament or discharge lamps." EN 85(A)(6) (emphasis added); HS Hdg. 85.39. These ENs therefore suggest that chapter 85 was intended to include at least unfinished lamps that are used in conjunction with other electrical equipment. As the Trade Court found, Gerson's candles more closely resemble the lamps described in chapter 94 than they do the lamps described in chapter 85. *Gerson*, 254 F. Supp. 3d at 1277.

Gerson challenges the Trade Court's ruling on several grounds. Gerson first argues that, by acknowledging that the candles "plausibly" fall within heading 8543, the Trade Court found that the candles are *prima facie* classifiable in that heading, which should have ended the inquiry. Gerson reads too much into the Trade Court's choice of words. While the court did say that it was "plausible" to read heading 8543 as covering Gerson's candles insofar as the candles, like all electrical lamps ever in existence, qualify in the abstract as electrical machines or apparatus, the court correctly and emphatically rejected that reading as nonsensical. The court noted that such a reading would impermissibly expand the scope of heading 8543 and diminish the scope of heading 9405. Thus, far from finding that the candles are classifiable under heading 8543, the court found that reading implausible.

Gerson next argues that the Trade Court erred by allegedly using the ENs to displace the plain language of

heading 8543. Gerson relies heavily on our decision in *Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423 (Fed. Cir. 1997), *superseded on other grounds as stated in WWRD US, LLC v. United States*, 886 F.3d 1228 (Fed. Cir. 2018), to support its argument. That case, however, is inapposite. There, the Trade Court held that earthenware jack-o'-lantern mugs and pitchers did not fall within a heading covering "other festive, carnival or other entertainment articles" because all the examples provided in the ENs for the relevant chapter were non-functional in nature. *Id.* at 1429. In other words, the Trade Court in *Midwest* used the ENs to hold "as a matter of law that when an item with a particular ornamentation . . . serves a utilitarian function . . . , it must be classified under the utilitarian article provision." *Id.* at 1428–29. We reversed, holding that it was improper to employ the ENs' "limiting characteristics to narrow the language of the classification heading itself," which was otherwise unambiguous. *Id.* at 1429; *see Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1293 (Fed. Cir. 2008) ("[W]hen the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, we do not afford [the Notes] any weight." (internal quotation marks omitted)).

The Trade Court committed no such error here. First, unlike in *Midwest*, the language of heading 8543 *is* ambiguous standing alone, as described above. Second, the court here construed heading 8543 in view of heading 9405 to conclude that it does not cover Gerson's candles. Only after having done that did the court note that the ENs supported its construction. In other words, the Trade Court did not begin its analysis by applying limiting characteristics gleaned from the ENs to heading 8543, as in *Midwest*. Third, the court here did not use the ENs to limit the scope of the headings. Rather, the court used the ENs merely to "clarify the scope" of the language in heading 8534, which is "entirely proper." *See LeMans Corp. v. United States*, 660 F.3d 1311, 1320–21 (Fed. Cir.

2011) (approving consideration of the ENs in a similar context, and noting that the Trade Court "did not find that the Explanatory Notes *precluded* classification of LeMans' goods as sports equipment" but rather "found only that these examples informed its interpretation of the term 'sports equipment'"); *StoreWALL*, 644 F.3d at 1363 ("[T]he Court of International Trade's importation of the 'rack exclusion' from the Explanatory Notes into its definition of 'unit furniture' does not contradict the common commercial meaning of 'unit furniture,' but instead clarifies the scope of the term.").

Finally, Gerson argues that the Trade Court erred to the extent it employed a "class or kind" analysis. Gerson pounces on the Trade Court's statement that its candles "are within a class or kind of electric lamps that are self-contained, i.e., independently used," and therefore fall within chapter 94 rather than chapter 85. *Gerson*, 254 F. Supp. 3d at 1277. Gerson asserts that this type of "class or kind" analysis is only appropriate when the heading at issue is a "use" heading—i.e., one that refers to products by their use. *See BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1377–78 (Fed. Cir. 2011). Here, Gerson asserts, the headings at issue are *eo nomine* provisions—i.e., ones that refer to products by their specific names. *See La Crosse*, 723 F.3d at 1358.

Regardless of whether these provisions are use or *eo nomine* provisions, the Trade Court did not perform a "class or kind" analysis, as evidenced by the fact that the court did not reference the factors that govern that analysis. *See BenQ*, 646 F.3d at 1377–80; *United States v. Carborundum Co.*, 536 F.2d 373, 377 (CCPA 1976). Rather than using the phrase "class or kind" to invoke a legal doctrine, the Trade Court used the phrase for its ordinary meaning to make the point that Gerson's candles are the type of articles classified under heading 9405

rather than heading 8543. The court's analysis was proper.[6]

In sum, the Trade Court did not err in determining that Gerson's candles fall within heading 9405 rather than heading 8543. Gerson does not dispute that, if its candles fall within heading 9405, the appropriate sub-heading is 9405.40.80, which covers "other" electric lamps not made of a "base metal."

That conclusion alone precludes classification under subheading 8543.70.70. We nevertheless address below Gerson's and its amici's[7] subheading-specific arguments

---

[6] Despite stating in its opening brief that heading 9405 is *eo nomine*, Gerson argues in reply that the heading is in fact a "basket" provision insofar as it contains the qualifying phrase "not otherwise specified or included." Reply Br. 2; *see R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) (stating that a heading "is a 'basket provision'" if it contains "the terms 'not elsewhere specified or included'"). "[C]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically." *R.T. Foods*, 757 F.3d at 1354 (internal quotation marks omitted). But this characterization does little to help Gerson. As explained above, heading 8543 does not cover Gerson's candles. As a result, the candles fall within heading 9405, regardless of how that provision is characterized. Further, heading 8543 is *also* a "basket" provision because it covers only those electrical machines and apparatus "not specified or included elsewhere in" the chapter. Thus, according to Gerson's logic, classification under heading 8543 would also be disfavored.

[7] Target General Merchandise Inc. and twelve other companies whose imported LED devices were classified by Customs under heading 9405 filed an amicus brief in support of Gerson.

to clarify the role that subheadings play in the classification analysis.

B.  The Trade Court Correctly Found that Gerson's Candles Are Not Classifiable Under Subheading 8543.70.70

Gerson and its amici ask us to look past heading 8543 and to focus instead on subheading 8543.70.70, which covers "electric luminescent lamps."  They assert that Gerson's candles use LEDs to produce light and therefore indisputably qualify as "electric luminescent lamps." They argue, moreover, that the placement of subheading 8543.70.70 within heading 8543 evidences Congress's intent for all "electric luminescent lamps" to qualify as "electrical machines and apparatus."  We disagree on all counts.

Gerson's and its amici's "bottom-up" analysis—which begins with a subheading and proceeds upward through the headings—is backwards.  Classification under the GRIs must take a "top-down" approach, beginning, "as it must, with the language of the headings," and ending with the language of the subheadings. *Orlando Food*, 140 F.3d at 1440.  In particular, under GRI 1, a court must first determine whether the merchandise is correctly classified under a particular heading of the HTSUS. *See Otter Prods.*, 834 F.3d at 1375 ("According to GRI 1, the HTSUS headings and section or chapter notes govern the classification of a product."); *BenQ*, 646 F.3d at 1376 ("When determining the correct classification for merchandise, a court first construes the language of the headings in question, in light of any related section or chapter notes."); *see also Orlando Food*, 140 F.3d at 1440 ("[W]hen determining which heading is the more specific, and hence the more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings.").  "Only *after* determining that a product is classifiable under the heading should the court look to the subheadings to find the correct

classification for the merchandise." *Orlando Food*, 140 F.3d at 1440 (emphasis added); *see LeMans*, 660 F.3d at 1316 ("We are first to look to headings, *then* subheadings, to determine the proper classification." (emphasis added)).

The reason for this analytic approach is simple—it ensures that the more specific subheading characterizations are informed by the more general headings in which they appear. Beginning the analysis with the subheading, as Gerson urges, would effectively divorce the analysis from the necessary context provided by the higher-level headings. *See Orlando Food*, 140 F.3d at 1440 (holding that the Trade Court's "analysis contradicted GRI 1" because "it construed only the language of the subheadings rather than the language of the headings in classifying the product"). Further, Gerson's insistence that we consider only subheading 8543.70.70 would allow that provision to expand the scope of heading 8543, which would correspondingly diminish the scope of heading 9405. Such a reading is impermissible, as headings "are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014).

Gerson and its amici next suggest that, under the Trade Court's logic, *no* electric luminescent lamp would *ever* be classifiable under subheading 8543.70.70 because such lamps would not be considered "electrical machines and apparatus" as contemplated by heading 8543. They assert that subheading 8543.70.70 "becomes a nullity, into which no product can ever fall." Amici Br. 11. We find this argument both exaggerated and unpersuasive. While those products that *would* fall within subheading 8543.70.70 are not before us, we are satisfied that the Trade Court's holding leaves ample room in that subheading for certain electric luminescent devices that fall within the scope of heading 8543. *See* EN 85.43(16) (listing as examples "[e]lectro-luminescent devices, gener-

ally in strips, plates, or panels, and based on electro-luminescent substances (e.g., zinc sulphide) placed between two layers of conductive material").

We therefore reject Gerson's and its amici's subheading-specific arguments.

### III. CONCLUSION

We have considered Gerson's and its amici's remaining arguments and find them unpersuasive. The Trade Court correctly determined that Gerson's candles are classifiable under subheading 9405.40.80, subject to a duty rate of 3.9% *ad valorem*.

**AFFIRMED**