# United States Court of Appeals
# for the Federal Circuit

---

**RUBIES COSTUME COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1305

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00407-MAB, Judge Mark A. Barnett.

---

Decided: April 29, 2019

---

GLENN H. RIPA, New York, NY, argued for plaintiff-appellant. Also represented by JOHN ANTHONY BESSICH, SUZANNE MCCAFFERY, Follick & Bessich, P.C., Huntington Station, NY.

PETER MANCUSO, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by AMY RUBIN; JEANNE DAVIDSON, JOSEPH H. HUNT, Washington, DC; MICHAEL W. HEYDRICH, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border

Protection, United States Department of Homeland Security, New York, NY.

———————————

Before PROST, *Chief Judge,* REYNA and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

Rubies Costume Company appeals the grant of summary judgment by the Court of International Trade in favor of the Government as to the tariff classification of certain imported merchandise. The imported merchandise consists of a nine-piece Santa Claus costume packaged and sold together as a set. The Santa Claus costume is customarily worn in connection with the celebration of the Christmas holiday. The parties argue as to the implications of the "festive" nature of the costume. The merchandise, however, is excluded from classification as "festive articles" by the notes to chapter 95 of the Harmonized Tariff Schedule of the United States. The correct classification of the merchandise is under HTSUS 6110.30.30, 6103.43.15, 6116.93.94, and 4209.92.30. On that basis, we affirm the judgment of the Court of International Trade.

BACKGROUND

I. The Imported Merchandise

The Court of International Trade ("CIT") set forth the following undisputed facts. Rubies Costume Company ("Rubies") imports and sells traditional Christmas Santa Claus costumes, including the "Premier Plush 9 Piece Santa Suit" ("the Santa Suit") at issue in this case. The Santa Suit consists of a jacket, pants, gloves, a toy sack, a beard, a wig, a hat, a belt, and shoe covers. Rubies packages and sells the nine pieces of the Santa Suit together in a zippered plastic bag as shown below:



J.A. 649.

The jacket and pants are made from 73% acrylic/27% polyester knit pile fabric. The sewn-in care instruction labels in the jacket and pants state that the garments require dry cleaning.

The jacket comes in one standard size and has a double-layer collar with white faux fur fabric and a front snap closure. The jacket features a full-length zipper closure in the front, concealed by an overlapping flap of white faux fur that snaps at top and bottom. The jacket sleeves have turned-edge hemming and white faux fur cuffs. The jacket also includes double-layer belt loops and tightly stitched interior seams. Woven satin fabric lines the entire jacket.

The pants have pockets with turned-edge hemming and tightly stitched seams. An elasticized waist with a 1.75"-wide waist band secures the pants on the wearer.

The ankle edge of the pants is sewn with a loose overlock stitch that the wearer tucks into boots during use. Woven satin fabric also lines the pants.

Of the other pieces of the Santa Suit, only the gloves and toy sack are also at issue in this case. The gloves consist of 100% polyester knit fabric and have fourchettes between the fingers. The toy sack measures thirty-six inches in length and is constructed from 100% polyester knit pile fabric. The toy sack closes with a drawstring cord.

## II. The Procedural History

On June 20, 2012, Rubies requested a binding pre-importation ruling from U.S. Customs and Border Protection ("Customs") on the tariff classification of the Santa Suit. Exactly one year later, Customs issued Ruling Letter HQ H237067 in which it classified the Santa Suit under several tariff classifications of the Harmonized Tariff Schedule of the United States ("HTSUS"). *See* Customs Ruling HQ H237067 (June 20, 2013), 2013 WL 3783025, at *1. On October 25, 2013, after Rubies entered the subject merchandise, Customs applied its HQ H237067 ruling and liquidated the entry of the Santa Suit according to the following classifications and duty rates for each piece:

| Piece | HTSUS Class | Duty Rate |
|---|---|---|
| Jacket | 6105.20.20 | 32.0% *ad valorem* |
| Pants | 6103.43.15 | 28.2% *ad valorem* |
| Gloves[1] | 6115.95.60 | 10.0% *ad valorem* |

---

[1]    In Ruling Letter HQ H237067, Customs classified the gloves under 6116.93.94. Otherwise, Customs' liquidation of the entry was consistent with the Ruling Letter.

| | | |
|---|---|---|
| Toy Sack | 4202.92.30 | 17.6% *ad valorem* |
| Beard, Wig, Hat, Belt, Shoe Covers | 9505.90.60 | Free of Duty |

J.A. 6–7; J.A. 719–21.

Rubies protested the liquidation of the entry pursuant to 19 U.S.C. § 1514(a). Rubies contended that all nine pieces of the Santa Suit fall under HTSUS chapter 95 as "[f]estive . . . articles," requiring duty-free entry, and requested an accelerated disposition of the protest. Customs did not render a decision on the protest within thirty days, so the protest was deemed denied under 19 U.S.C. § 1515(b) on December 14, 2013. On December 27, 2013, Rubies filed suit in the CIT, challenging the denied protest.

After discovery, Rubies and the Government filed cross-motions for summary judgment. The CIT denied Rubies' motion and granted summary judgment in favor of the Government. The CIT found that "the Santa Suit is not a festive article." J.A. 2. The CIT found that the pieces of the Santa Suit fell under the following HTSUS provisions: 6110.30.30 for the jacket; 6103.43.15 for the pants; 6116.93.94 for the gloves; and 4202.92.30 for the toy sack. The parties did not dispute the classification of the beard, wig, hat, belt, and shoe covers.

The CIT's classification of the Santa Suit jacket differed from Customs' classification. The CIT determined that the jacket fell under heading 6110, and not heading 6105. Note 4 of chapter 61 requires that garments under heading 6105 must have more than ten stitches per linear centimeter. J.A. 33. The undisputed facts at summary judgment showed that the jacket did not meet this requirement. The CIT, therefore, found that the proper classification for the jacket was under heading 6110, specifically 6110.30.30, which does not have the same requirement and

coincidentally provides the same duty as HTSUS 6105.20.20: 32.0% *ad valorem*.

The CIT also determined that the gloves were classified under heading 6116, rather than heading 6115, as Customs classified them at liquidation. The CIT's classification was consistent with Ruling Letter HQ H237067 and resulted in an increased duty of 18.6% *ad valorem*.

Rubies timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### DISCUSSION

We review the CIT's grant of summary judgment de novo. *Gerson Co. v. United States*, 898 F.3d 1232, 1235 (Fed. Cir. 2018) (citing *Otter Prods., LLC v. United Stat*es, 834 F.3d 1369, 1374–75 (Fed. Cir. 2016)). Despite our de novo review, "we give great weight to the informed opinion of the CIT." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017).

The classification of goods under the HTSUS requires a two-step process. First, the court "determines the proper meaning of specific terms in the tariff provisions, which is a question of law that we review without deference." *Gerson*, 898 F.3d at 1235. Second, the court determines whether the subject merchandise falls within the description of such terms as properly construed, which is a question of fact that we review for clear error. *La Crosse Tech., Ltd. v. United States,* 723 F.3d 1353, 1358 (Fed. Cir. 2013). If there is "no dispute as to the nature of the merchandise, the two-step classification analysis collapses entirely into a question of law." *Gerson*, 898 F.3d at 1235 (internal quotation marks omitted).

The HTSUS comprises a hierarchical structure that separates goods by headings and subheadings. *Otter Prods.*, 834 F.3d at 1375. The General Rules of Interpretation ("GRIs") of the HTSUS and the Additional United States Rules of Interpretation govern the classification of

goods. *Id.* We apply the GRIs in numerical order, starting with GRI 1. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).

GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative Section or Chapter notes." "We apply GRI 1 as a substantive rule of interpretation, such that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *La Crosse Tech.,* 723 F.3d at 1358 (quoting *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)). We interpret HTSUS terms according to their common and commercial meaning unless there is contrary legislative intent and may consult dictionaries, scientific authorities, and other reliable sources to ascertain the common meaning. *Otter Prods.*, 834 F.3d at 1375.

The applicable HTSUS[2] headings in this case are as follows:

4202

[T]oiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses . . . tobacco pouches, tool bags, sports bags . . . and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper

. . . .

6110

---

[2]    We cite to the 2013 version of the HTSUS in effect on the date of importation. *See LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011).

Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted:

. . . .

6116

Gloves, mittens and mitts, knitted or crocheted:

. . . .

**9505**

**Festive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof.**

(emphasis added). Notes 1(d), 1(e), and 1(u) to chapter 95 state the following:

[t]his chapter does not cover

. . . .

(d) Sports bags or other containers of heading 4202, 4303 or 4304;

(e) Sports clothing or **fancy dress, of textiles, of chapter 61 or 62**;

. . . .

(u) Racket strings, tents or other camping goods, or gloves, mittens and mitts (classified according to their constituent material).

(emphasis added).

## I. *Rubies I*

This court previously addressed the tariff classification of textile costumes in *Rubie's Costume Co. v. United States*,

337 F.3d 1350, 1352 (Fed. Cir. 2003) ("*Rubies I*").[3] In *Rubies I*, Rubies, the largest manufacturer of costumes in the United States, filed a Domestic Interested Party Petition, asserting that Customs should classify certain textile Halloween costumes manufactured by others being imported into the United States as articles of apparel under chapter 61 or 62. *Id.* Rubies contended that these costumes were virtually identical to those manufactured by Rubies, and that Customs had erroneously classified them as duty-free "festive articles." *Id.* The CIT agreed with Rubies and granted summary judgment in its favor. *Id.* at 1353.

On appeal, this court in *Rubies I* observed that Note 1(e) excludes from chapter 95 "fancy dress, of textiles of chapter 61 or 62," but does not define "fancy dress." *Id.* at 1356. According to the *Rubies I* court, "that the term 'fancy dress,' . . . includes costumes is plain enough." *Id.* at 1357. The *Rubies I* court further determined that the "fancy dress" exclusion under Note 1(e) to chapter 95 "encompasses textile costumes that are classifiable as 'wearing apparel' under Chapter 61 or 62." *Id.* at 1356–57. The court identified factors as indicators of wearing apparel such as the extent of styling features, including "zippers, inset panels, darts or hoops, and whether the edges of the materials [are] left raw or finished." *Id.* at 1357. The court reversed the CIT's decision and concluded that Customs correctly determined that "textile costumes of a flimsy nature and construction, lacking in durability, and generally recognized as not being normal articles of apparel, are

---

[3] The parties' briefing refers to this 2003 decision as "*Rubies II*" and to the underlying CIT decision in that case as "*Rubies I*." We reference only our prior decision here, so we refer to it as "*Rubies I*."

classifiable as 'festive articles'" under chapter 95 of the HTSUS.[4]  *Id.* at 1360.

Following *Rubies I*, Customs issued an Informed Compliance Publication, identifying factors that distinguish flimsy, nondurable costumes classified in chapter 95  from those that are well-made, comparable to normal wearing apparel classified in chapters 61 and 62.  U.S. Customs & Border Prot., Classification of Textile Costumes Under the HTSUS (2008), https://www.cbp.gov/sites/default/files/documents/icp077_3.pdf ("*Textile Costume ICP*").  The Textile Costume ICP establishes four distinguishing factors to consider in determining whether the costume is flimsy or well made:  styling, construction, finishing touches, and embellishments.  *Id.* at 11.  Customs relied on the Textile Costume ICP in classifying the Santa Suit in Ruling Letter HQ H237067.  Although not binding on this court, the ICP provides examples for each factor and guidance as to Customs' analysis in this matter.

The examples provided in the ICP align with the factors identified by the court in *Rubies I*, which recited "zippers, inset panels, darts or hoops, and whether the edges of the materials [are] left raw or finished" as indicators of wearing apparel.  337 F.3d at 1357.  The ICP provides examples of well-made styling, including merchandise with two layers of fabric and double-layer collars or belts.  *Textile Costume ICP* 12.  Examples of well-made construction include tight stitching and finished edges.  *Id.* at 13.  Examples of well-made finishing touches include thick, durable elastics and zipper closures with a fold fabric that covers the zipper.  *Id.* at 14.  Examples of well-made

---

[4]    The *Rubies I* court afforded *Skidmore* deference to Customs' interpretation of textile costumes classifiable as "festive articles." *Id.* at 1354 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).  In this appeal, neither party challenges the *Rubies I* interpretation.

embellishments include "embroidery, trimmings, and appliqués that have been sewn to the fabric," as well as "decorative overlock stitching visible at the neckline or wrists which provides ornamentation and increased durability at edges which receive significant wear." *Id.* at 15.

## II. The Santa Suit

Classification of the Santa Suit requires a two-step process: (1) determining the meaning of terms in the HTSUS, a legal question, *Gerson*, 898 F.3d at 1235; and (2) determining whether the subject merchandise falls within the description of such terms as properly construed, a factual question, *La Crosse Tech.,* 723 F.3d at 1358. The two-step classification inquiry ends at step one and remains solely a legal question if the nature of the merchandise is not in dispute. *See Gerson*, 898 F.3d at 1235.

Rubies argues that the CIT erred in granting summary judgment in favor of the Government because a genuine issue of fact exists as to whether the Santa Suit is "either [a] festive article or fancy dress." Appellant Br. 9. Rubies argues that the Santa Suit "does not constitute fancy dress because it does not constitute a usual and normal article of wearing apparel." *Id.* at 7. Rubies further argues that "there is a distinction between well-made wearing apparel and a well-sewn costume that is intended to be worn by a person for the purpose of accurately portraying a festive character during a festive season." *Id.* at 16. Rubies' arguments rely on its belief that because the Santa Suit is plainly a festive costume worn for festive occasions, it cannot be a normal article of wearing apparel.

There is no dispute that the Santa Suit is a costume traditionally worn in conjunction with the celebration of Christmas, a festive occasion, to portray Santa Claus, a fictional jolly character that significantly contributes to the festivity of the occasion. Instead, the dispute centers on the meaning and scope of terms in the HTSUS, not on the nature of the Santa Suit.

Rubies' arguments misapprehend that in *Rubies I*, we recognized that "fancy dress" plainly includes costumes. 337 F.3d at 1356–57 ("[T]he relevant definition of 'fancy dress' is 'a costume (as for a masquerade or party) departing from conventional style and usu[ally] representing a fictional or historical character, an animal, the fancy of the wearer, or a particular occupation.'" (citing *Fancy Dress*, *Webster's Third New International Dictionary* (1986))).

That a person wears the Santa Suit or portions thereof during festive Christmas holiday occasions does not preclude it from classification as "fancy dress" of textile material. Indeed, the "fancy dress, of textiles, of chapter 61 or 62" exclusion under Note 1(e) of chapter 95 presumes that we may otherwise recognize the subject merchandise as a festive article, unless it qualifies as fancy dress, i.e., a costume, of textile material. Thus, an article classified as "fancy dress of textile material" can plainly constitute a costume worn on festive occasions without conflicting with the requirement set forth in *Rubies I* that a "festive article" is "not generally recognized as normal wearing apparel."

In view of the foregoing, we start our analysis by applying GRI 1, which requires us to consult the language in the headings and the chapter notes to determine each article's classification. *Gerson*, 898 F.3d at 1235–36. If the relevant heading terms and chapter notes describe the merchandise such that a single classification subheading applies to each article, we are not required to consult the subsequent GRIs. The application of GRI 1, however, requires that we determine whether the relevant pieces of the subject Santa Suit fall within the Note 1(e) exclusion pursuant to the factors set forth in *Rubies I*.[5] This process requires us to determine if the undisputed facts establish

---

[5]    "1. This chapter does not cover  . . . (e) Sports clothing or fancy dress, of textiles, of chapter 61 or 62."  HTSUS Chapter 95, Note 1(e).

whether the pieces are of durable and nonflimsy construction and otherwise generally recognized as normal wearing apparel.

The CIT determined that the classification for the Santa Suit jacket is HTSUS 6110.30.30, which covers "[s]weaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted . . . [o]f man-made fibers . . . [o]ther." J.A. 39. Applying the styling, construction, and finishing touch factors noted above, the undisputed facts establish that the Santa Suit jacket has the features of a well-made textile costume, classifiable as wearing apparel under HTSUS chapter 61. The jacket has woven satin fabric lining and is constructed of an acrylic and polyester knit pile fabric. The jacket also has a double-layer collar with white faux fur fabric and a front snap closure, a full-length zipper concealed by white faux fur, finished edges with white faux fur cuffs, double-layer belt-loops, and well-sewn seams. The jacket does not have any embellishments, but that does not change the well-made nature of the jacket based on other factors.

Additionally, the record shows that Rubies manufactures the jacket so that it can be worn and cleaned multiple times throughout the Christmas season, such that the jacket may survive several Christmas seasons. The jacket requires "Dry Clean Only" care. These, along with the factors described above, are all characteristics of normal wearing apparel, and there is no dispute that the jacket is of durable and nonflimsy construction.

Although the precise term for the type of jacket included with the Santa Suit does not appear in the list of items in heading 6110, the jacket shares the characteristics of the named articles in the heading. Like a sweater or sweatshirt, the jacket covers the upper body and provides some warmth to the wearer but does not protect against wind, rain, or extreme cold. The wearer can also wear the jacket over either undergarments or other clothing. Thus,

we hold that heading 6110 covers the Santa Suit jacket under the rule of *ejusdem generis* because the jacket shares the essential characteristics of the articles named in the heading. *See Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1107 (Fed. Cir. 2014). The CIT therefore correctly found that the proper classification for the jacket is under HTSUS heading 6110, which excludes it from classification as a "festive article."

The CIT classified the Santa Suit pants under HTSUS 6103.43.15, covering "men's or boy's . . . trousers . . . [o]f synthetic fibers . . . [o]ther." J.A. 39. The undisputed facts establish that the pants also have the features of a well-made textile costume, classifiable as wearing apparel under HTSUS chapter 61. Like the jacket, the pants have woven satin fabric lining and are constructed of an acrylic and polyester knit pile fabric. The pants also have finished, turned-edge hemmed pockets and a thick, durable elastic 1.75"-waist band. Although the ankle edges have loose, overlock stitching, the ankle edges are hidden when the pants are tucked into boots. The pants do not have any embellishments, but as with the jacket, that factor does not change the classification of the pants as a well-made textile costume.

Further, Rubies manufactured the pants in such a way to survive multiple wears throughout the Christmas season and subsequent Christmas seasons, and the pants also require dry cleaning. In addition to the factors identified above, these are characteristics of normal wearing apparel, and there is no dispute that the pants are of durable and nonflimsy construction. Thus, the CIT correctly found that the proper classification for the pants is under HTSUS heading 6103, which excludes them from classification as "festive articles."

The CIT also concluded that the Santa Suit gloves are classified under HTSUS 6116.93.94, covering "[g]loves . . . [knitted] . . . [o]f synthetic fibers . . . [o]ther . . . [w]ith

fourchettes." J.A. 40. Note 1(u) to chapter 95 excludes "gloves" from classification as "festive articles." The undisputed facts establish that the Santa Suit gloves consist of 100% polyester knit fabric and have fourchettes and are thus plainly described in the HTSUS heading and subheading. Therefore, the CIT correctly found that the proper classification for the gloves is under HTSUS heading 6116, which excludes them from classification as "festive articles."

The CIT found that the Santa Suit toy sack is classified under HTSUS 4202.92.30, covering "[t]ravel, sports and similar bags . . . of textile materials: [o]ther." J.A. 42. Although chapters 61 and 62 do not cover the toy sack, Note 1(d) to chapter 95 also excludes "[s]ports bags or other containers of heading 4202, 4303 or 4304" from classification as "festive articles." HTSUS heading 4202 encompasses a variety of bags, knapsacks, backpacks, and similar bags of textile materials. The undisputed facts establish that the toy sack is made from the same fabric as the jacket and pants, measures thirty-six inches in length, and closes with a drawstring cord. Although "toy sack" does not specifically appear in the list of items in heading 4202, we have defined the essential characteristics of items under this heading as "organizing, storing, protecting, and carrying various items." *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995). The toy sack, with its drawstring closure and size, has at least the essential characteristic of carrying various items. Thus, the CIT correctly found the proper classification for the toy sack is under heading 4202, which excludes it from classification as a "festive article."

## CONCLUSION

Based on the foregoing, we hold that the items of merchandise in question are articles of normal wearing apparel, and that the tariff classifications for the Santa Suit jacket, pants, and gloves are, respectively, HTSUS 6110.30.30, 6103.43.15, and 6116.93.94. The classification

for the toy sack is HTSUS 4209.92.30.  On that basis, the judgment of the CIT is affirmed.

**AFFIRMED**

COSTS

No Costs.